1998 ND 18

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mark STEINBACH, Defendant and Appellant.**

**Criminal Nos. 970156, 970157.**

Supreme Court of North Dakota.

Jan. 21, 1998.

Robert E. Manly, State's Attorney, New Rockford, for plaintiff and appellee. Appearance by Robert G. Manly, Assistant State's Attorney.

Michael R. Hoffman, Bismarck, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Mark Steinbach appealed from a judgment of conviction and commitment, based upon jury verdicts finding him guilty of murder and of physical obstruction of a government function and tampering with physical evidence. Steinbach also appealed from a court order denying his motion for a new trial. We affirm the judgment on all convictions and the order denying Steinbach's motion for a new trial.

I

[¶ 2] Debra Lynn Reinhardt died of a shotgun wound to the neck and upper back in the early morning hours of March 4, 1996. The relevant events occurring prior to Reinhardt's death are not in dispute.

[¶ 3] Steinbach and Reinhardt became acquainted in 1994 while attending alcoholics anonymous and narcotics anonymous meetings in Devils Lake. Steinbach separated from his wife in 1994, and they were subsequently divorced. Sometime in 1995 Reinhardt, who had been living in Kansas, re-turned to North Dakota. She and Steinbach commenced living together on Steinbach's ranch near New Rockford, together with Reinhardt's two daughters from prior relationships, Kari, age 2, and Amber, age 4, and Steinbach's son, Aaron, age 16.

[¶ 4] During August 1995, both Steinbach and Reinhardt resumed drinking. On Sunday March 3, 1996 Reinhardt drove to a New Rockford bar to purchase beer. When Steinbach awoke from a nap that afternoon, he drove to town to purchase beer at the same bar. He became upset when he saw Reinhardt was drinking there. When she and a male acquaintance invited Steinbach to talk with them, Steinbach responded he had better things to do and he returned to the ranch. When Reinhardt returned to the ranch later that evening she got into a heated dispute with Steinbach. Aaron testified Reinhardt grabbed her sleeping daughters from their beds and barricaded herself and them in Aaron's room to get away from Steinbach. Eventually, Reinhardt and Steinbach calmed down and the children went back to their beds to sleep. Steinbach and Reinhardt went downstairs to the living room and drank some beers together. According to Steinbach, he went to bed around 12:30 a.m. Monday morning and Reinhardt stayed up watching television and drinking.

[¶ 5] Authorities first began investigating the case when Reinhardt's sister telephoned the sheriff's office on March 8, 1996 to report Reinhardt missing. When contacted by officers about Reinhardt's whereabouts, Steinbach said he and Reinhardt had argued the past Sunday evening and the next morning she was gone. Steinbach told a special agent he had not reported Reinhardt missing because he was hoping she would return home.

[¶ 6] On March 21, 1996 Steinbach led investigators to Reinhardt's nude body, located one mile north of Steinbach's ranch in a shelter belt. Steinbach told authorities he awoke early Monday morning, March 4, 1996, to a loud bang and found Reinhardt's body on the living room floor. He later changed his story and testified at trial that he found Reinhardt's body sitting in a living room chair with the shotgun in her lap. He told them he drank some beer after finding Rein-

hardt dead. He then placed Reinhardt's body in a pickup and drove to the shelter belt where he dragged her body into the trees and left her there, with plans to bury her when the ground thawed. Steinbach told authorities he removed Reinhardt's blouse and shorts because they were catching on things while he was dragging her body to the shelter belt. Steinbach said he then returned to the ranch, scrubbed the chair, and placed a blanket over it. Steinbach also took the officers to a pole barn on the ranch where he had hidden in a plastic bag Reinhardt's jacket, wallet, glasses, and the sawed-off double barrel shotgun which fired the shot that killed her.

[¶ 7] Steinbach was ultimately charged with class AA felony murder for Reinhardt's death and with two class A misdemeanors, physical obstruction of a government function and tampering with physical evidence. The jury found Steinbach guilty of all charges, and the trial judge sentenced Steinbach to one year on each misdemeanor charge, to be served consecutively, and to life imprisonment, without the opportunity of parole, for the murder conviction.

## II

[¶ 8] Steinbach argues the trial court abused its discretion in allowing the State to introduce a photograph showing Reinhardt's nude body lying in the shelter belt where Steinbach dragged and left it. Steinbach claims the photograph is of no evidentiary value and was introduced solely to prejudice the jury against him.

[¶ 9] Under N.D.R.Ev. 401–403, a trial court is vested with broad discretion to decide if evidence is relevant and if its probative value substantially outweighs the danger of unfair prejudice. *State v. Carlson,* 1997 ND 7, ¶ 8, 559 N.W.2d 802. We will reverse the court's decision in admitting evidence only if the court has abused its discretion by acting in an arbitrary, unconscionable, or unreasonable manner. *Id.*

[¶ 10] In *State v. Iverson,* 187 N.W.2d 1, 37 (N.D.), *cert. denied,* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971), we spoke about the general admissibility of photographs of a victim in a homicide prosecution:

"It appears to be a well-settled rule that photographs of the victim in a prosecution for homicide, duly verified and shown by extrinsic evidence to be faithful representations of the victim at the time in question, are, in the discretion of the trial court, admissible in evidence as an aid to the jury in arriving at a fair understanding of the evidence, condition and identification of the body, even though such photographs may have the additional effect of tending to excite the emotions of the jury."

In addition to giving visual evidence of the body and the crime, the State sought to introduce the photograph:

"[T]o destroy the picture that this woman was loved and cared for by this defendant. . . . And its not just a graphic showing of the position and location of this woman . . . but more than anything, as much as anything, it shows the treatment she received admittedly by the defendant in this case. Therefore, I think it[']s extraordinary [sic] relevant to defeat a probable showing of love and caring on the part of this defendant to show the jury exactly the way this body was treated after the death of this woman. It goes far beyond medical proof, Your Honor. I think it goes to show motive and it goes to show intent. It goes to the very heart of our case here."

The court concluded this photograph's probative value outweighed its potential prejudice. We conclude the trial court did not abuse its discretion in admitting it.

## III

[¶ 11] Steinbach argues the testimony of Dr. Daniel Davis, Deputy Coroner with the Hennepin County Coroner's Office, in Minneapolis, Minnesota, was unfairly prejudicial because Davis concluded Reinhardt died from a shotgun wound as a result of a homicide, not suicide, without knowing the length of the shotgun that killed her. At oral argument counsel also argued Davis' testimony was objectionable because it was based, in part, on the fact Steinbach concealed Reinhardt's body.

[¶ 12] Under N.D.R.Ev. 702 an expert may testify to scientific, technical, or other specialized knowledge which will assist the trier of fact. Under N.D.R.Ev. 704 an expert is specifically authorized to give his opinion even though it embraces an ultimate issue of fact to be decided by the trier of fact. N.D.C.C. § 11–19.1–13 requires the coroner to report the cause of death, the manner of death, and the mode in which the death occurred. The determination to admit or not admit expert testimony rests within the sound discretion of the trial court and will not be reversed on appeal unless the court has abused its discretion. *State v. Fontaine,* 382 N.W.2d 374, 377 (N.D.1986). N.D.R.Ev. 702 envisions generous allowance of the use of expert testimony if a witness is shown to have some degree of expertise in the field of which he testifies. *Anderson v. A.P.I. Co. of Minnesota,* 1997 ND 6, ¶ 9, 559 N.W.2d 204.

[¶ 13] Davis testified he has conducted more than 1,000 autopsies and has assisted others in conducting at least as many. Davis concluded Reinhardt had been shot with a shotgun at very close range. The shot entered her neck at the left front and exited her body on the right side of her back at a point lower than the entrance wound. He testified Reinhardt's hands showed no evidence of defensive type wounds or of injury related to holding a firearm. When asked what information was provided to him by the investigators, Davis responded he had information Reinhardt was shot while sitting in a chair and that her nude body had been found several days or weeks later in a remote wooded area where her body had been concealed. He concluded Reinhardt died as a result of a homicide shotgun blast to the neck. Davis testified that although he did not know at the time of the autopsy the barrel of the shotgun had been sawed off, his conclusion about the cause and manner of death would not change because the length of the gun would not have a significant impact on his ultimate conclusion.

[¶ 14] Steinbach's counsel did not object to Davis' testimony during the prosecutor's direct examination. During cross-examination Steinbach's counsel questioned Davis about his conclusion on the cause of death relative to the length of the shotgun. He asked Davis if he was "100 percent sure that she died at the hands of someone else?" Davis responded that he was certain "to a reasonable degree of medical certainty." He testified that, although a person Reinhardt's size could hold up a short shotgun and pull the trigger, he had formulated his opinion looking at "more than a single aspect of the scenario." He considered his own examination and information given to him about the scene and the fact "there was a clandestine disposal of the body, hiding of the body." Steinbach's counsel again did not object or move to strike Davis' testimony. We conclude the trial court did not abuse its discretion in admitting Davis' expert testimony in this case.

IV

[¶ 15] At the close of the prosecution's case, Steinbach's attorney moved for a judgment of acquittal under N.D.R.Crim.P. 29, alleging the State's evidence was insufficient, as a matter of law, to sustain the convictions. The trial court denied the motion and, on appeal, Steinbach asserts the trial court abused its discretion in doing so.

[¶ 16] In deciding a motion for judgment of acquittal under N.D.R.Crim.P. 29(a), the trial court, upon reviewing the evidence most favorable to the prosecution, must deny the motion if there is substantial evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. *State v. Kingsley,* 383 N.W.2d 828, 829 (N.D.1986). To successfully challenge the sufficiency of the evidence on appeal, a defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt. *State v. Fasching,* 461 N.W.2d 102, 103 (N.D.1990). A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts, and will not be disturbed on appeal unless it is unwarranted. *State v. Breding,* 526 N.W.2d 465, 469 (N.D.1995). A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Carson,* 453 N.W.2d 485 (N.D.1990).

[¶ 17] By presenting evidence after a motion for judgment of acquittal is denied at the close of the prosecution's case in chief, the defendant permits this court to review on appeal the entire record to determine whether substantial evidence exists to sustain the verdict. *Kingsley*, 383 N.W.2d at 829. In deciding a question of sufficiency of the evidence we do not resolve conflicts in the evidence nor do we weigh the credibility of the witnesses. *Fasching*, 461 N.W.2d at 103. On appeal, we determine only whether there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. *Carson*, 453 N.W.2d at 485. We conclude there is substantial evidence in this record to support Steinbach's convictions.

[¶ 18] By Steinbach's own testimony, he and Reinhardt had a heated argument the night before her death. The gun that killed her was his own shotgun which he hid in a pole barn after her death, with other potential evidence such as Reinhardt's jacket, glasses, and wallet. He concedes he dragged her nude body to a shelter belt and then lied to authorities that she was missing and he did not know her whereabouts. When Steinbach finally decided to show authorities where Reinhardt's body was located, he first told them he found her body lying on the living room floor and later told them she was sitting in a chair still holding the shotgun that had killed her. The State introduced evidence the shotgun had a recoil of six to eight feet.

[¶ 19] Steinbach's son, Aaron, testified that after Reinhardt disappeared he noticed his father had a cut on his hand similar to a cut Aaron sustained when he had fired that same sawed-off shotgun. Aaron also testified that several months after Reinhardt's death, but before trial, Steinbach told him "he cleaned up the gun very well, so Mr. Manly and Mr. Schagunn would never find any prints on the gun . . . ."

[¶ 20] Finally, Davis, the expert forensic pathologist who performed an autopsy on Reinhardt's body, concluded she was a victim of a homicide shooting. Having carefully reviewed the record evidence, we conclude the trial court did not abuse its discretion in denying Steinbach's motion for judgment of acquittal. There was substantial evidence upon which the trier of fact could find Steinbach was guilty of all charges in this case.

## V

[¶ 21] Steinbach asserts the trial court abused its discretion in denying his motion for a new trial based upon newly discovered evidence that Aaron lied while testifying. At the end of the 1995–1996 school year Aaron moved to California to live with his mother. He and his mother returned to North Dakota in September 1996 and then drove Steinbach's car back to California. Steinbach's attorney questioned Aaron about whether he stole anything when he left:

"Q. Besides the car, did you and Carol take anything belonging to Mark Steinbach?

"A. Before or after we left?

"Q. When you left.

"A. Not when we left, no.

"Q. Did you take something before you left?

"A. Yes.

"Q. Did you take anything that belonged to John Steinbach?

"A. No."

On the motion for new trial Steinbach submitted an affidavit by Brent Heberle, owner of a Ford dealership in Forsyth, Montana, saying he stored Aaron's vehicle and it contained items of personal property which, it was later determined, belonged to Aaron's father and grandfather, John Steinbach. Steinbach asserts this newly discovered evidence shows Aaron lied about not taking his father or grandfather's property. He argues, if the jury knew about it they may have differently viewed Aaron's testimony about matters relevant to Steinbach's involvement in Reinhardt's death. The trial court concluded the newly discovered evidence was not of such a nature that it would likely produce an acquittal at retrial.

[¶ 22] Under N.D.R.Crim.P. 33(a), the trial court may grant a new trial to the defendant if required in the interests of

justice. To prevail on a motion for a new trial on the ground of newly discovered evidence, the defendant must show (1) the evidence was discovered after trial, (2) the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. *State v. VanNatta*, 506 N.W.2d 63, 70 (N.D.1993). A motion for new trial based upon newly discovered evidence rests within the discretion of the trial court, and we will not reverse the court's denial of the motion unless the court has abused its discretion. *Id.* If the newly discovered evidence is of such a nature that it is not likely to be believed by the jury or to change the results of the original trial, the court's denial of the new trial motion is not an abuse of discretion. *State v. Garcia*, 462 N.W.2d 123, 124 (N.D. 1990).

 [¶ 23] Steinbach's attorney argued during the hearing on appeal that our decision in *State v. Hegland*, 355 N.W.2d 803 (N.D.1984), is applicable here and warrants the granting of a new trial *Hegland* involved recanted testimony where a witness, after trial, asserted he had lied while testifying at the trial. The evidence presented here on the new trial motion is clearly distinguishable. Aaron has not recanted his testimony. Rather, other evidence has been presented to demonstrate Aaron lied at the trial about taking personal property belonging to others. In essence, this newly discovered evidence is merely impeaching evidence that Aaron is not a truthful witness. Generally, impeaching affidavits are insufficient grounds for granting a new trial. *VanNatta*, 506 N.W.2d at 70; *State v. Garcia*, 462 N.W.2d 123, 125 (N.D.1990). The impeaching evidence here concerns a minor peripheral issue, a collateral matter. Furthermore, Aaron's testimony about taking Steinbach's property was equivocating. He conceded he took his father's property "before" leaving North Dakota but said he did not take things "when we left." Circumstantial evidence in this case demonstrating Steinbach's guilt is overwhelming. Evidence that Aaron might have been less than candid about stealing some personal property would not, in any likelihood, result in an acquittal upon retrial. We conclude the trial court did not abuse its discretion in denying the motion for a new trial.

## VI

 [¶ 24] Steinbach argues the trial court ·impermissibly considered acts of domestic abuse by Steinbach against Reinhardt in sentencing him to life in prison without parole. A trial judge is allowed the widest range of discretion in fixing a criminal sentence; this court has no power to review the discretion of the sentencing court in fixing a term of imprisonment within the range authorized by statute. *State v. Ennis*, 464 N.W:2d 378, 382 (N.D.1990). A sentence within the minimum and maximum statutory limits will not be set aside unless the trial court substantially relied upon an impermissible sentencing factor. *State v. Garcia*, 1997 ND 60, ¶ 53, 561 N.W.2d 599, *cert. denied*, — U.S. —, 118 S.Ct. 193, 139 L.Ed.2d 131. N.D.C.C. § 12.1–32–04 lists factors which must be considered by the court in sentencing an offender to imprisonment. These enumerated factors, although entitled to consideration, are not controlling of the court's discretion and are not an exclusive list of all the court may consider in sentencing. *See State v. Bell*, 540 N.W.2d 599, 601 (N.D.1995).

[¶ 25] Steinbach complains it was impermissible for the court to consider his abusive conduct toward Reinhardt prior to killing her. We disagree. The record contains evidence from which the factfinder could conclude Steinbach acted abusively toward Reinhardt during their relationship. There was evidence Reinhardt received a serious bruise and cut on her head when Steinbach aggressively took a .22 caliber rifle from her. There was evidence Steinbach cut Reinhardt with a knife and that the cut was sufficiently serious for her to require stitches. Aaron testified two or three times a month Steinbach and Reinhardt would have physical fights during which Reinhardt would sometimes sustain bruises. He also testified that on the night preceding her murder, Reinhardt fled in fright of Steinbach with her daughters to the safety of Aaron's bedroom,

barricading the door so Steinbach could not enter.

[¶ 26] The court appropriately expressed "there can be little mistake in saying that domestic violence was an integral part of this case." However, the trial court expressly enumerated at least nine other factors, all of which are listed under N.D.C.C. § 12.1–32–04, in reaching its decision on sentencing. Among the factors considered was that Steinbach killed Reinhardt without "strong provocation" and with "no substantial grounds which tended to excuse or justify" his conduct. Steinbach has failed to demonstrate the trial court substantially relied upon an impermissible factor in sentencing him.

## VII

[¶ 27] The judgment of conviction and the order denying a new trial are affirmed.

[¶ 28] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.