1999 ND 76

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Joseph M. KLEIN, Defendant and Appellant.**

No. 980394.

*Supreme Court of North Dakota.*

April 27, 1999.

See also, 560 N.W.2d 198.

Jonathan R. Byers, Assistant Attorney General, Attorney General's Office, Bismarck, for plaintiff and appellee.

David N. Ogren, Wishek, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Joseph M. Klein appealed from a judgment of conviction and commitment based upon a jury verdict finding him guilty of gross sexual imposition. We affirm.

### I.

[¶ 2] In November 1994, Klein was charged with gross sexual imposition in violation of N.D.C.C. § 12.1–20–03(2). *See State v. Klein*, 1997 ND 25, ¶ 2, 560 N.W.2d 198. Klein initially pled not guilty, but changed his plea to guilty after entering into a binding plea agreement in exchange for a maximum sentence of ten years with four years suspended if he completed the sex-offender treatment program. *Id.* Klein moved to withdraw his guilty plea on January 22, 1996, at his sentencing hearing. *Id.* at ¶ 6. The trial court denied Klein's motion, and he appealed to this court arguing he was entitled to withdraw his guilty plea as a matter of right. *Id.* at ¶ 9. Klein contended the trial court abused its discretion in denying his motion because the plea had not been "accepted" under N.D.R.Crim.P. 32(d)(3). *Id.* This court reversed and remanded holding Klein was entitled to withdraw his guilty plea as a matter of right. *Id.* at ¶ 21.

[¶ 3] Following a two-day jury trial after remand, Klein was found guilty of gross sexual imposition on June 4, 1998. On November 16, 1998, a criminal judgment and commitment was filed sentencing Klein to ten years imprisonment with one and a one-half years suspended for a period of two years following release from incarceration. Klein appealed on November 26, 1998.

### II.

[¶ 4] During the direct examination of the victim's (E.M.'s) mother, the State offered into evidence a school picture of E.M. at the age of six. Klein's attorney objected to the photograph on the basis of relevancy. The trial court overruled the objection stating: "I believe it is admissible to show the photograph of the child at the time of the alleged act." Klein argues the trial court abused its discretion in allowing the photograph into evidence.

[¶ 5] N.D.R.Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See also State v. Osier*, 1999 ND 28, ¶ 5, 590 N.W.2d 205. All relevant evidence is generally admissible under N.D.R.Evid. 402, but relevant evidence may be excluded under N.D.R.Evid. 403 if its probative value is substantially outweighed by the danger of unfairly prejudicing the defendant. The power to exclude evidence under N.D.R.Evid. 403 should be "sparingly exercised" recognizing "any prejudice due to the probative force of evidence is not unfair prejudice." *State v. Ash*, 526 N.W.2d 473, 477 (N.D.1995) (citation omitted). Thus, a trial court has broad discretion when deciding the admissibility of a photograph. *Id.* at 476; *see also State v. Gagnon*, 1999 ND 13, ¶ 9, 589 N.W.2d 560. This court will reverse a trial court's decision to admit or exclude evidence only if we determine the court acted arbitrarily, unconscionably, or in an unreasonable manner. *State v. Steinbach*, 1998 ND 18, ¶ 9, 575 N.W.2d 193.

[¶ 6] In *State v. Ash*, 526 N.W.2d 473, 476 (N.D.1995), this court discussed the admissibility of two photographs. One of the photographs introduced by the State was of the deceased victim, his wife, and their children; the other photograph was of Ash on his way to court for his initial appearance. *Id.* Ash contended the photographs were irrelevant. *Id.* We concluded the family photograph was relevant to identify the victim for the jury and to provide an illustration of the victim's size compared with his wife's size and Ash's size. *Id.* at 477. "This picture was relevant to upcoming testimony about [the victim's] body being placed in a pickup and later dragged into a field, and the exhibit gave the jury insight into the strength required to perform those acts." *Id.* The photograph of

Ash was relevant to better appraise the jury of Ash's "strength and muscularity at the time of the crime...." *Id.* We held the trial court did not abuse its discretion in admitting the photos because they were relevant and not unfairly prejudicial. *Id.; see also State v. Steinbach,* 1998 ND 18, 575 N.W.2d 193. In *Steinbach,* at ¶ 10, we concluded the trial court did not abuse its discretion in admitting a photograph of the nude victim offered to show Steinbach's motive and intent.

■ [¶ 7] Here, Klein was charged with gross sexual imposition under N.D.C.C. § 12.1–20–03(2)(a) for engaging in sexual contact with a victim "less than fifteen years old." E.M. was six years old when he was molested, and twelve years old at the time of trial. The photograph was relevant to show the jury what E.M. looked like at the time of the offense, as opposed to what he looked like during his testimony at the trial. *See State v. Ash,* 526 N.W.2d 473, 476 (N.D.1995). The photograph was much more illustrative than the statement that E.M. was six years old at the time of the offense. *See, e.g., Allen v. State,* 683 So.2d 38, 43 (Ala.Crim. App.1996) (concluding the trial court did not err in a sexual abuse case by admitting a photograph of the victim at the age of six because the photograph was taken around the time of the incidents, the victim's age was a material issue, and the victim was thirteen years old at the time of trial).

[¶ 8] Further, credibility was the main issue at trial with E.M. testifying he was molested by Klein repeatedly, and Klein testifying he never inappropriately touched E.M. Klein argued E.M. fabricated the incidents and attempted to discredit E.M.'s testimony by emphasizing the two year time period between the time of the incidents and the time when E.M. reported them to his mother and a counselor. E.M. testified he did not tell his mother about the incidents until Klein was in jail for a separate offense and he "felt safe" to tell his mother because Klein could not carry out threats Klein had made. E.M. testified at trial:

> MR. BYERS: [E.M.], what did [Klein] say to you while this was happening?

> E.M.: He said: Don't tell anybody or he would kill me.

> MR. BYERS: Did he say that once?

> E.M.: He said that more than once.

> MR. BYERS: [E.M.], why didn't you tell somebody that this was happening?

> E.M.: Because I was so—I didn't know. And I really thought he was serious because I didn't tell anybody because I was afraid he was going to kill me.

The age and size of E.M., when compared to Klein's age and size, is probative of whether E.M. would take seriously a threat of physical harm if he reported what was happening. The photograph permitted the jury to see what E.M. looked like at the age of six when he asserted he had been deathly afraid of Klein, as opposed to his appearance at the trial when he was twelve years old and testified he was no longer afraid of Klein. We conclude the photograph of E.M. at the age of six was relevant and therefore the trial court did not abuse its discretion in admitting it.

### III.

[¶ 9] At the time of trial, Klein was serving a sentence on a separate conviction for gross sexual imposition. Klein's attorney requested a motion in limine to exclude all references to Klein's incarceration and prior conviction. The trial court ordered:

> no references or evidence be offered as to any prior criminal convictions, unless in such case the defendant shall testify in which case his criminal record then may be admissible. But I believe you also should make your individual objections in the course of the trial, should you believe the question posed by opposing counsel may land itself or suggest that it encompassed other alleged criminal conduct.

[¶ 10] Klein argues the trial court abused its discretion in allowing the State to cross-exam Vicky Klein, his mother, about prior sexual offenses committed in her home. Vicky babysat E.M. in her home during the time period in which the offenses took place, and E.M. testified the molestation occurred there. Klein called Vicky as a witness to

support the credibility of his testimony and to discount E.M.'s testimony.

[¶ 11] During the State's cross-examination of Vicky Klein the following exchange occurred:

MR. BYERS: Are you saying that if something sexual was going on you would have noticed?

VICKY KLEIN: Yes, I would of.

. . . .

MR. BYERS: Are you saying that what [E.M.] is talking about could not have happened in your home?

VICKY KLEIN: Not to my knowledge.

MR. BYERS: I want you to listen to my next question very carefully. You should be able to answer yes or no.

VICKY KLEIN: Okay.

MR. BYERS: Is it true that in the past two people have pled guilty to sexual offenses involving children under your care?

MR. OGREN: Objection, Your Honor.

THE COURT: Overruled. You may answer.

VICKY KLEIN: No.

MR. BYERS: Is it true that two people have pled guilty to offenses involving a child under your care?

VICKY KLEIN: I don't understand him there, Judge. .

THE COURT: Well—

MR. BYERS: I'll repeat it one more time, Your Honor.

MR. BYERS: Is it true that two people have pled guilty to offenses involving a child that was under your care?

VICKY KLEIN: Two people pled guilty, yes.

Although Klein did not state a basis for his objection at trial in his brief, Klein argues the question regarding whether two people had previously pled guilty to offenses involving a child in Vicky's care was unfairly prejudicial under N.D.R.Evid. 403. Klein asserts the jury may have inferred from the exchange that he was one of the two persons who had pled guilty.

[¶ 12] Any party may attack the credibility of a witness by impeachment. N.D.R.Evid. 607. N.D.R.Evid. 611(b) governs the scope of impeachment by cross examination: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witnesses. The court, in the exercise of discretion, may permit inquiry into additional matters as if on direct examination." *See also State v. Osier,* 1999 ND 28, ¶ 5, 590 N.W.2d 205. The explanatory note to N.D.R.Evid. 611 explains that our rule is substantially similar to Rule 611 of the Federal Rules of Evidence, and "gives the court wide discretion over the mode and order of presenting evidence." *See generally* 28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6165 (4 th ed.1993). However, the trial court may exclude a cross-examination question despite its probative value under N.D.R.Evid. 403, if the question is unfairly prejudicial to the defendant, confuses the issues, misleads the jury, or causes an "undue delay, waste of time, or needless presentation of cumulative evidence." This court will not disturb a trial court's decision on the scope of cross-examination absent an abuse of discretion. *Osier,* at ¶ 5; *State v. Cox,* 325 N.W.2d 181, 182 (N.D.1982).

[¶ 13] Here, the import of Vicki Klein's direct testimony was that if something sexual was going on in her home, she would have known about it; therefore, E.M. necessarily fabricated his testimony. Whether the incidents could have occurred in Vicky's home was certainly relevant to the issue of whether Klein committed the crime of gross sexual imposition. The cross-examination question was necessary to impeach Vicky's testimony, related to her direct testimony, and went to her credibility or her veracity.

[¶ 14] Klein also contends the motion in limine should have prevented the State from referencing his prior conviction during the trial. We agree with Klein regarding the intent of the order; however, we conclude the State did not violate the order. Although the jury may possibly have inferred from the question that one of the persons who pled

329

guilty to a crime involving a child was Klein, the State did not directly reference Klein, and the question was as factually neutral as possible under the circumstances. Given the importance of the testimony and the need to cross-examine for purposes of credibility, we believe the State's question was carefully crafted to avoid a violation of the trial court's order regarding Klein's prior conviction.

[¶ 15] The State's cross-examination question whether two people had previously pled guilty to crimes involving a child in Vicky Klein's care was relevant to impeach her testimony and not unfairly prejudicial to Klein. We therefore conclude the trial court did not abuse its discretion in controlling the mode and presentation of the State's evidence.

### IV.

[¶ 16] The judgment convicting Klein of gross sexual imposition is affirmed.

[¶ 17] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.