2004 ND 187

STATE of North Dakota, Plaintiff and Appellee

v.

Waylon L. CHARETTE, Defendant and Appellant.

No. 20040001.

Supreme Court of North Dakota.

Oct. 12, 2004.

Cynthia M. Feland, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Steven D. Mottinger (argued) and Douglas W. Nesheim (appeared), Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Waylon Charette appealed from a criminal judgment and commitment entered upon a jury verdict. The jury found Charette guilty of one count of murder, a class AA felony; one count of gross sexual imposition, a class A felony; and two counts of burglary, class B felonies. Charette claims there was insufficient evidence to support these verdicts and that the district court erred in two of its evidentiary rulings at trial. After reviewing the proceedings below, we hold the district court did not err in its evidentiary rulings and we affirm Charette's convictions.

I.

[¶ 2] At approximately 8:00 p.m. on the evening of December 27, 2002, Diane Bate's Driscoll home was burglarized and Bate's wallet was stolen. Bate saw the suspect leaving her home and noticed the suspect fall while walking away from the residence. Bate drove to a local bar, called 911, and offered police a description of the person she saw leaving her house. Subsequently, Bate's wallet was discovered in the neighboring home of Marian Swenning. Swenning had been sexually assaulted and murdered and her house had been ransacked. One of Swenning's

neighbors saw an individual looking into Swenning's bay window at approximately 8:15 p.m. Another neighbor received a call from Swenning's residence at 8:20 p.m., as noted on the neighbor's caller identification system. The neighbor's phone rang only twice and then stopped. A third neighbor saw an individual in the vicinity of the Swenning residence between approximately 9:00 and 10:00 p.m. This neighbor stated that the individual fell while walking. There were shoe or boot tracks between Bate's home and Swenning's residence, and the tracks showed that the right foot appeared to be dragging in the snow, as if the right leg was injured.

[¶ 3] Charette had been drinking since around noon on December 27, 2002, and he was asked to leave a local bar that evening. Charette left the bar and began walking in the direction of the Bate and Swenning residences. Charette's sister testified Charette left the bar slightly after 8:00 p.m.; another witness placed Charette's departure time at around 8:30–8:45 p.m. Charette's whereabouts were unaccounted for from the time he left the bar until he returned to his home at approximately 9:30–10:00 p.m. wearing only a coat and complaining of a knee injury. Charette was taken to an emergency room in Bismarck where he handed a security officer a coin purse he stated he found behind a telephone in the waiting area. The State later introduced evidence at trial that the coin purse belonged to Marian Swenning.

[¶ 4] Officers investigating the Swenning crime scene found a pair of hiking boots and pants between the victim's legs. Charette claimed the boots and pants were not his, the pants were not of the size he was then wearing, and that the color of the pants did not match witnesses' descriptions of the clothing he was wearing that day. Charette's girlfriend testified that the pants found at the crime scene be-

longed to Charette. DNA found on a pair of boxer shorts discovered in Swenning's home did not exclude Charette as a source of the DNA. A bloody footprint found at the Swenning crime scene matched Charette's footprint. A bloody fingerprint found at Swenning's home matched Charette's print. The shirt Charette was wearing on December 27th, which police later discovered in Charette's yard, contained bloodstains matching Swenning's DNA profile. Swenning's bloodstained shoes and a box containing various items of Swenning's property were discovered at Charette's home.

[¶ 5] Charette testified he was attacked by two men after leaving the bar, abducted, and hit over the head. Charette stated he did not remember anything after being hit on the head until later waking up in the yard of his mother's home.

[¶ 6] Charette points to the fact he does not meet the physical description of the person Diane Bate saw walking away from her home and that none of Bate's belongings were found in his possession. Charette stresses that certain witnesses placed him at a local bar until after the time Bate placed her 911 call. Charette argues that, even if one accepts the time line offered by the State, he simply could not have single-handedly committed the burglaries, sexual assault, and murder in the time provided. He contends the evidence does not support the conclusion he was responsible for placing the box of Marian Swenning's possessions outside his home and that various witnesses testified he was wearing dark blue or black pants on December 27th, whereas the pants discovered at the crime scene were tan.

## II.

[¶ 7] In an appeal challenging the sufficiency of the evidence, this Court "look[s] only to the evidence most favor-

able to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction." *State v. Knowels,* 2003 ND 180, ¶ 6, 671 N.W.2d 816 (quoting *State v. Kunkel,* 548 N.W.2d 773, 773 (N.D.1996)). "A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *Id.* This Court "will not weigh conflicting evidence, nor judge the credibility of witnesses." *State v. Klose,* 2003 ND 39, ¶ 19, 657 N.W.2d 276. "A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts, and will not be disturbed on appeal unless it is unwarranted." *State v. Steinbach,* 1998 ND 18, ¶ 16, 575 N.W.2d 193. "A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* And, importantly, "[a] jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Wilson,* 2004 ND 51, ¶ 9, 676 N.W.2d 98 (quoting *State v. Hatch,* 346 N.W.2d 268, 277 (N.D.1984)); *see also Zander v. Workforce Safety and Insurance,* 2003 ND 194, ¶ 13, 672 N.W.2d 668 ("The existence of conflicting testimony or other explanations of the evidence does not prevent the fact-finder from reaching a conclusion the evidence is clear and convincing or even clear beyond a reasonable doubt." (quoting *Zundel v. Zundel,* 278 N.W.2d 123, 129 (N.D.1979))).

■ [¶ 8] There is an abundance of evidence in the record before us from which a rational jury could have found Waylon Charette guilty on all counts. Few cases with such overwhelming circumstantial evidence have come before this Court. Many pieces of evidence link Charette to the Swenning crime scene. Boots, pants, and boxer shorts found at the crime scene were identified as belonging to Charette. Upon returning to his residence on the evening of December 27th, Charette was wearing only a coat. DNA profiles for both Charette and Swenning were found on the aforementioned boxer shorts. Hair found under Swenning's body was microscopically similar to Charette's hair. Bloody foot impressions found at the Swenning crime scene were consistent in size to Charette's foot. A bloody fingerprint from the Swenning crime scene matched Charette's print. DNA evidence established to a statistical certainty that Swenning's blood was on Charette's shirt and shoes belonging to Swenning, both of which were discovered at Charette's home. Charette had bruises, scratches, and abrasions on his body that were consistent with a sexual assault. Charette turned over a coin purse, later identified as Swenning's, to a security guard in a Bismarck emergency room. Various pieces of Swenning's property were discovered at Charette's residence. Testimony was adduced at trial that placed Charette in the location of the Bate and Swenning residences at the time the crimes occurred. Charette's sister and two other witnesses testified that Charette left a local bar around 8:00 p.m. and began walking in the direction of Swenning's residence. Charette's whereabouts were unaccounted for from this time until he returned to his residence between approximately 9:30 and 10:00 p.m. Multiple witnesses reported seeing a single individual either on or in the vicinity of Swenning's property. Finally, witnesses reported seeing this individual fall on multiple occasions, which could be consistent with Charette's heavy drinking.

[¶ 9] There are also key pieces of evidence that serve to link Charette to the Bate burglary. Bate's wallet was discovered at the Swenning crime scene. Investigators located track evidence between the Bate and Swenning residences, and the tread pattern of the tracks matched the tread pattern of the boots recovered from the Swenning crime scene. Once again, these boots were linked to Charette at trial. The track evidence also exhibited a noticeable drag of the right leg, and the State introduced evidence at trial that Charette had previously injured his right leg. Finally, Diane Bate saw the person who had burglarized her home and noted that the person was heading in the direction of Swenning's residence. This evidence could logically and rationally permit a jury to find that the party responsible for the Swenning crimes was also responsible for the Bate burglary.

[¶ 10] When viewed in a light most favorable to the prosecution's case, the evidence allowed the jury to conclude Waylon Charette was guilty of the crimes for which he was charged. That potentially contradictory or inconsistent evidence was introduced at trial does not undermine the jury's verdict, given the substantial and significant evidence in this case. Every factual inconsistency need not be resolved. Rather, it is the jury's role to weigh contradictory and inconsistent evidence to determine credibility and guilt.

### III.

[¶ 11] Charette next argues the district court abused its discretion in refusing to allow him to try on the pants found at the murder scene. Charette wanted to demonstrate that these pants could not have been the ones he was wearing on December 27th. He emphasizes these pants were critical to the State's case and that several witnesses described the pants he was wearing on December 27th as being of a darker color, which is inconsistent with the tan pants found at the murder scene. According to Charette, a demonstration would have assisted the jury in determining the credibility of these witnesses.

[¶ 12] Under N.D.R.Ev. 401, 402, and 403, a district court has broad discretion in admitting or excluding evidence. *State v. Steinbach,* 1998 ND 18, ¶ 9, 575 N.W.2d 193 (citing *State v. Carlson,* 1997 ND 7, ¶ 8, 559 N.W.2d 802). Specifically, "the determination whether to admit demonstrative evidence, including experiments, demonstrations, and tests, is left to the sound discretion of the trial court." *Butz v. Werner,* 438 N.W.2d 509, 518 (N.D.1989). We will reverse a district court's decision to admit or exclude such evidence only if the court has abused its discretion by acting in an arbitrary, unconscionable, or unreasonable manner. *Id.* All relevant evidence is allowed; however, even relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.D.R.Ev. 403. A district court has broad discretion in deciding whether evidence is relevant or not relevant. *Steinbach,* at ¶ 9. "While NDREv 403 gives a trial court the power to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, that power should be sparingly exercised." *State v. Ash,* 526 N.W.2d 473, 477 (N.D.1995) (citing *State v. Zimmerman,* 524 N.W.2d 111, 114 (N.D.1994)).

[¶ 13] The district court did not abuse its discretion in refusing to allow Charette to try on the murder scene pants. First, the pants, which were covered in blood, had been specially packaged for tri-

al. The State argued that allowing Charette to try on the pants could have created a potential bio-hazard harmful to those in the courtroom. More critical to our review, however, is the evidence adduced at trial that Charette had gained a "considerable" amount of weight during the almost year-long interval between the murder and the trial date. Given this change in circumstances, a demonstration posed the risk of misleading the jury. *See South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 834 (N.D.1980) (trial court did not abuse its discretion in refusing testimony regarding the accuracy of various accident scene photographs when the witness's only firsthand knowledge of the accident scene occurred after the installation of new warning signs); *Higgs v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.*, 16 N.D. 446, 451, 114 N.W. 722, 724 (1908) (photograph of an accident scene taken several months after the accident nonetheless admissible, provided no substantial changes to the scene occurred from the time of the accident).

[¶ 14] Finally, it is important to note Charette presented considerable evidence to refute the State's assertion that the murder-scene pants belonged to him. For example, Charette testified the tan pants from the murder scene were not his, were not of a style or color he wore, and would have been too small for him to have worn. The district court's ruling did not deprive the defendant of the means to rebut the State's evidence. Accordingly, the district court did not abuse its discretion in refusing Charette's proffered demonstrative evidence.

### IV.

[¶ 15] Finally, Charette argues that the district court erred in allowing testimony from the victim's granddaughter at trial. Swenning's granddaughter was allowed to identify certain pieces of Swenning's property, including the coin purse Waylon Charette turned over at a Bismarck emergency room. Charette objected to the introduction of this evidence at trial, contending the State failed to reveal the availability of this testimonial evidence in its responses to discovery requests. Charette couches his argument in N.D.R.Crim.P. 16. Under this rule, Charette argues the State was required to disclose the content of the granddaughter's proposed testimony.

[¶ 16] In pertinent part, N.D.R.Crim.P. 16 states:

(f) Demands for Production of Names, Addresses, and Statements of Witnesses; Statements of Codefendants; Statements of Other Persons.

(1) Names, Addresses, and Statements of Prosecution Witnesses. Upon written request of the defendant, the prosecution shall furnish to the defendant a written list of the names and addresses of all prosecution witnesses, and any statements made by them, whom the prosecuting attorney intends to call in the presentation of the case in chief, together with any records of prior criminal convictions of any of those witnesses which are within the knowledge of the prosecuting attorney. If a written request for discovery of the names, addresses, and statements of witnesses has been made by a defendant, the prosecuting attorney must be allowed to perpetuate the testimony of those witnesses in accordance with the provisions of Rule 15.

. . . .

(4) The term "statement," as used in this subdivision, means:

(i) a written statement made by the witness, codefendant, or other person

and signed or otherwise adopted by the declarant; or

(ii) a stenographic, mechanical, electrical, or other record, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by the witness, codefendant, or other person to an agent of the prosecution and recorded contemporaneously with the making of the oral statement.

"Under N.D.R.Crim.P. 16, the prosecution must disclose, upon the defendant's request, names and statements of witnesses the prosecution intends to call and also the relevant statements within the prosecution's possession or control of other persons." *State v. Thorson*, 2003 ND 76, ¶ 10, 660 N.W.2d 581; *see* N.D.R.Crim.P. 16(f)(1). Rule 16 is a discovery rule, not a constitutional mandate, designed to further the interests of fairness. *State v. Ensminger*, 542 N.W.2d 722, 723 (N.D.1996). Although the trial court may impose sanctions for a failure to comply with Rule 16, including prohibiting the delinquent party from introducing into evidence the material not disclosed under N.D.R.Crim.P. 16(d)(2), before the issue of sanctions becomes relevant there must be a threshold determination that Rule 16 was violated.

[¶ 17] Here, the State repeatedly informed the defendant that Candace Swenning, the victim's granddaughter, could be called as a State's witness, and defense counsel was free to interview her prior to trial. The "statements" made by every State's witness, including Candace Swenning, were made available to the defendant by the State's open file policy. Rule 16(f)(1) requires only "statements" be disclosed by the prosecution. "Statement" is defined quite technically and tends to emphasize formal, written, or recorded declarations. *See* N.D.R.Crim.P. 16(f)(4). There is no indication Candace Swenning made a formal "statement" regarding the identification of the victim's property. Rather, the prosecution spoke with Candace Swenning to gain a sense of whether she might be able to identify her grandmother's possessions at trial. The fact the State did not formally record these pretrial interactions, disclose the results of these conversations, or highlight that Candace Swenning may attempt to identify her grandmother's possessions at trial, does not equate to a *per se* violation of Rule 16(f)(1). Rule 16 does not require disclosure of all information arguably labeled "important" or "big," regardless of the form of such information.

[¶ 18] The judgment is affirmed.

[¶ 19] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.