Filed 12/2/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 233

State of North Dakota, Plaintiff and Appellee

v.

Ray Leon Huether, Defendant and Appellant

No. 20100018

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Kelly Ann Dillon, Assistant State’s Attorney, P.O. Box 5005, Minot, N.D. 58702-5005, for plaintiff and appellee.

Kent M. Morrow, P.O. Box 2155, Bismarck, N.D. 58502-2155, for defendant and appellant.

State v. Huether

No. 20100018

Sandstrom, Justice.

[¶1] Ray Huether appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition.  We hold the district court’s denial of Huether’s motion to suppress is supported by sufficient competent evidence and is not contrary to the manifest weight of the evidence.  We also conclude the court did not rely upon an impermissible factor in sentencing Huether.  We affirm.

I

[¶2] The State charged Huether with possession of child pornography and with gross sexual imposition for allegedly engaging in  sexual acts with a child less than six years of age between April 2006 and August 2007.  During that time, Huether lived with the child’s mother, the child, and the child’s brother in Huether’s house in Minot.  Huether subsequently began working in Fargo and moved there in 2007, but returned to Minot on weekends for several months.  According to the child’s mother, she ended her relationship with Huether in February 2008, but he continued to allow the child’s family to live in his Minot house.

[¶3] In June 2008, the child’s mother reported to Minot police the child had revealed that Huether had engaged in oral sex with the child on several occasions.  During an interview at the Northern Plains Children’s Advocacy Center, the child stated Huether had engaged in oral sex with her on several occasions in “Ray’s office” in the basement of Huether’s Minot house.  On June 23, 2008, Minot Police Officer David Goodman went to Huether’s Minot house without a warrant to meet with the child’s mother and entered Huether’s basement office to see where the child said the sexual acts had occurred.  According to the officer, he initially believed the house belonged to the child’s family and the mother had access to the whole house.  The officer testified he observed some pornography and computer and video equipment in “Ray’s office,” and while in the office, he saw a utility bill in Huether’s name and then learned Huether owned the house.  The officer testified the child’s mother then informed him that while Huether lived in the house, the office was “basically off limits” to the child’s family.  According to the officer, he then left Huether’s basement office.  Partly on the basis of the officer’s entry into Huether’s basement office, Minot police officers subsequently obtained and executed a warrant to search Huether’s Minot house, resulting in the seizure of some evidence.

[¶4] Five weeks later, at about 7:45 in the morning, six law enforcement officers executed a search warrant for a house in Fargo where Huether rented a basement bedroom.  The owner of the house let the officers into the house and led Officer Goodman to a main floor bedroom where Huether was lying in bed.  According to Officer Goodman, Huether was told he was not under arrest, he was free to leave, and he did not have to answer any questions, and Huether stated he understood.  While the other officers executed the search warrant, Officer Goodman interviewed Huether in the main floor bedroom regarding the child’s allegations.  Huether was not given a warning under 
Miranda v. Arizona
, 384 U.S. 436 (1966), before he was interviewed.  The entire interview lasted approximately two hours, and during a recorded part of the interview, Huether made several incriminating statements about engaging in oral sex with the child.  Shortly after the interview and completion of the search, Huether was arrested and charged with gross sexual imposition and with possession of child pornography.

[¶5] Huether moved to suppress all evidence seized after the warrantless entry into his office in the Minot house and the incriminating statements he made to police at the Fargo house.  Huether claimed Officer Goodman failed to obtain valid consent to enter his office in his Minot house.  Huether also claimed the incriminating statements to police at the Fargo house were made before he received a 
Miranda
 warning and violated his right against self-incrimination.

[¶6] After hearing, the district court denied Huether’s motion to suppress evidence obtained after the entry into his office in his Minot house, ruling that when the officer initially entered the office, he reasonably believed the child’s mother had common authority and control over the premises and thus obtained valid third-party consent from the child’s mother to enter the office.  The court denied Huether’s motion to suppress some incriminating statements made to law enforcement officers at the Fargo house, ruling he was free to leave the area and was not under arrest or in custody when he made those statements.  The court ultimately severed the two criminal charges, and a jury found Huether guilty of gross sexual imposition.

[¶7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Huether’s appeal is timely under N.D.R.App.P. 4(b).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29-28-06.

II

[¶8] In 
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994), we established the standard of review of a district court’s decision on a motion to suppress evidence:

A trial court’s findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.  
City of Grand Forks v. Risser
, 512 N.W.2d 462, 464 (N.D. 1994) (request for second alcohol test); 
State v. Murray
, 510 N.W.2d 107, 109 (N.D. 1994) (voluntariness of confession); 
State v. Nelson
, 488 N.W.2d 600, 602 (N.D. 1992) (reasonable suspicion to stop vehicle); 
State v. Everson
, 474 N.W.2d 695, 704 (N.D. 1991) (consent to search).  We do not conduct a de novo review.  
State v. Discoe
, 334 N.W.2d 466, 470 (N.D. 1983).  We evaluate the evidence presented to see, based on the standard of review, if it supports the findings of fact. 
See
 
Risser
; 
Murray
; 
Nelson
; 
Everson
; 
Discoe
.

III

[¶9] Huether argues the district court erred in denying his motion to suppress all seized evidence stemming from the warrantless entry into his office in his Minot house.  He argues the entry into his office violated the Fourth Amendment and all subsequent evidence obtained as a result of that illegal entry was inadmissible.  He claims the child’s mother did not have common authority over his office and was required to receive permission from him to enter the office.  He asserts Officer Goodman made no attempt to ascertain the ownership of the house or the office and the officer’s belief about the child’s mother’s authority was not reasonable.  Huether contends the officer’s failure to ask the child’s mother basic questions about ownership before entering the house was unreasonable.

[¶10] The Fourth Amendment to the United States Constitution protects against unreasonable searches and generally prohibits the warrantless entry of a person’s home.  
State v. Zimmerman
, 529 N.W.2d 171, 174 (N.D. 1995).  Voluntary consent is an exception to the warrant requirement, and the prohibition against warrantless entries of a person’s home does not apply when voluntary consent has been obtained from the individual whose property is searched, or from a third party who possesses common authority over the premises.  
Fischer
, 2008 ND 32, ¶ 12, 744 N.W.2d 760; 
Zimmerman
, 529 N.W.2d at 174.  In 
Illinois v. Rodriguez
, 497 U.S. 177, 188-89 (1990), the United States Supreme Court held the Fourth Amendment is not violated if police officers reasonably believe a consenting third party has common authority over the premises, explaining:

[The] determination of consent to enter must “be judged against an objective standard: would the facts available to the officer at the moment . . . ‘warrant a man of reasonable caution in the belief’” that the consenting party had authority over the premises?  
Terry v. Ohio
, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).  If not, then warrantless entry without further inquiry is unlawful unless authority actually exists.  But if so, the search is valid.

Under 
Rodriguez
, there is no Fourth Amendment violation if police officers reasonably believe a consenting third party has authority over the property, when viewed from the officers’ perspective.  
Fischer
, at ¶ 12; 
Zimmerman
, at 174-75.

[¶11] Here the issue is whether the child’s mother had apparent authority to permit Officer Goodman to enter Huether’s office, which involves whether the officer reasonably believed the child’s mother had authority over the premises when he entered the office.  According to Officer Goodman, he initially believed the house belonged to the child’s family and the mother had access to the whole house.  The officer testified he observed some pornography and computer and video equipment in “Ray’s office,” and while in the office, he saw a utility bill in Huether’s name and then learned Huether owned the house.  The officer testified the child’s mother then informed him that while Huether lived in the house, the office was “off limits” to the child’s family.  According to the officer, he then left Huether’s basement office.

[¶12] The district court found that when Officer Goodman entered Huether’s office with the child’s mother, it was reasonable for him to believe the mother had control of the house, and even after he learned Huether owned the house, it would not have been unreasonable to believe the child’s mother had common authority over the premises.  The officer’s testimony provides sufficient competent evidence to support the court’s finding that he reasonably believed the child’s mother had authority over the premises, and the court’s decision is not contrary to the manifest weight of the evidence.  We conclude the court did not err in deciding the officer had valid third-

party consent to initially enter Huether’s office and the Fourth Amendment was not violated when the officer entered the office.  Because the police lawfully entered Huether’s office, the evidence subsequently seized as a result of information obtained during that entry was not the fruit of an unlawful entry.  
See
 
State v. Byzewski
, 2010 ND 30, ¶ 10, 778 N.W.2d 551 (evidence obtained as a result of illegally acquired evidence generally must be suppressed as fruit of the poisonous tree).

IV

[¶13] Huether argues the district court erred in denying his motion to suppress incriminating statements he made to police at the Fargo house.  He argues he was subjected to custodial interrogation without a 
Miranda
 warning when he made the incriminating statements.  He claims the court erred in failing to consider the psychological restraint imposed on him by the presence of the police in a bedroom in the early morning hours.  He claims he was in custody because he did not feel free to leave and a reasonable person in his situation would not have felt free to leave.

[¶14] In 
Miranda
, 384 U.S. at 444, the “United States Supreme Court held the prosecution may not use statements made during the ‘custodial interrogation’ of a defendant unless it demonstrates the use of procedural safeguards, now generally referred to as 
Miranda
 warnings, to secure the privilege against self-incrimination.”  
City of Fargo v. Egeberg
, 2000 ND 159, ¶ 12, 615 N.W.2d 542.  The Court defined “custodial interrogation” to mean “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”  
Miranda
, at 444.  Whether a person is in custody is a mixed question of law and fact and is fully reviewable on appeal.  
State v. Helmenstein
, 2000 ND 223, ¶ 13, 620 N.W.2d 581.  “When analyzing whether the accused was in custody, all circumstances surrounding the interrogation must be considered, but the ultimate inquiry is whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest.”  
State v. Sabinash
, 1998 ND 32, ¶ 14, 574 N.W.2d 827.  The test for custody is objective and does not depend on the arresting officer’s subjective motive or thoughts.  
Helmenstein
, at ¶ 13.  When evaluating whether a person is in custody, the only relevant inquiry is how a reasonable person in the suspect’s position would have understood the situation.  
Helmenstein
, at ¶ 14; 
State v. Eldred
, 1997 ND 112, ¶ 10, 564 N.W.2d 283.

[¶15] The district court found Huether was told he was not under arrest, he was free to leave, and he understood he was not in custody.  The court found there was “not strong evidence of restraint of [Huether’s] freedom of movement” during the interview and Huether voluntarily acquiesced to Officer Goodman’s request to respond to questions.  The court found there were no “strong-arm tactics” or deceptive stratagems employed by the police during questioning.  The court also found Huether was questioned in a room with which he was familiar and he indicated he understood he was not in custody or under arrest.  The court recognized, however, the atmosphere of the questioning was police dominated after Officer Goodman told Huether there were other officers in the house, and Huether was arrested a short time after the questioning.  The court granted Huether’s motion to suppress “
only
 as it pertains to any statements made by [Huether] after Det. Goodman informed [him] of the number of officers in the house and specifically indicated one of them was a computer forensic specialist 30 or so minutes before the end of the interview.”  The court, however, did not suppress several incriminating statements by Huether about oral sex with the child that were made by him before Officer Goodman told him there were other officers in the house.  Officer Goodman’s testimony provides sufficient competent evidence to support the district court’s findings, and the court’s decision is not contrary to the manifest weight of the evidence.  We conclude the court did not err in denying Huether’s motion to suppress incriminating statements made by Huether before Officer Goodman informed Huether about the other officers in the house.

V

[¶16] Huether argues the district court erred in considering an impermissible factor during sentencing.  He argues the court erred in considering a violation of a position of “trust” with the child as an aggravating factor under N.D.C.C. § 12.1-32-04(13), which states that a sentencing factor is an “abuse [of] a public position of responsibility or trust.”

[¶17] Section 12.1-32-04, N.D.C.C., provides a nonexclusive list of factors for consideration in sentencing.  Because the list is nonexclusive, a court does not err merely because it considered a factor not on the list.  In 
State v. Bell
, 540 N.W.2d 599, 601 (N.D. 1995), we considered an argument about abuse of a public position of responsibility or trust, and we said the “responsibility of a parent to his child, though perhaps not a ‘public position of trust’ in one sense, is nevertheless a very real trust in which all of society has a deep and abiding interest.”  We recognized “[p]arents are entrusted by our society with both the right and the responsibility to care for and raise their children,” and “[w]hen that trust is grievously breached . . . [the] breach is clearly an appropriate factor for consideration in sentencing.”  
Id.
  We held a district court did not err in considering a defendant’s parental relationship with his daughter in sentencing the defendant for crimes involving sexual contact with the daughter.  
Id.

[¶18] Here, Huether was living with the child’s mother at the relevant times, and there was evidence several of the sexual acts occurred when Huether was watching the child while her mother was attending school.  Huether was essentially in a relationship with the child that was similar to the defendant’s relationship to the victim in 
Bell
.  The district court’s reference to a position of trust in sentencing Huether was not an impermissible consideration, and we conclude the court did not err in relying on that factor in sentencing Huether.

VI

[¶19] Huether argues the evidence was insufficient to support the guilty verdict because there was no evidence of penetration.

[¶20] In reviewing challenges to the sufficiency of the evidence, we view the evidence and reasonable inferences in the light most favorable to the verdict.  
State v. Charette
, 2004 ND 187, ¶ 7, 687 N.W.2d 484.  “‘A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor.’”  
Id.
 (quoting 
State v. Knowels
, 2003 ND 180, ¶ 6, 671 N.W.2d 816).  In reviewing challenges to the sufficiency of the evidence, we do not reweigh conflicting evidence, nor judge the credibility of witnesses.  
Charette
, at ¶ 7.

[¶21] Huether was convicted of gross sexual imposition under N.D.C.C. § 12.1-20-

03(1)(d) for engaging in a sexual act with a person less than 15 years old.  Under N.D.C.C. § 12.1-20-02(4) “sexual act” means “sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any other portion of the human body and the penis, anus, or vulva.”  “Sexual contact” means “any touching, whether or not  through the clothing or other covering, of the sexual or other intimate parts of the person . . . for the purpose of arousing or satisfying sexual or aggressive desires.”  N.D.C.C. § 12.1-20-02(5).  Under those definitions, penetration is not a required element of gross sexual imposition.  
See
 
State v. Skaro
, 474 N.W.2d 711, 714 (N.D. 1991) (penetration is not required element for offense of having sexual contact with person less than fifteen years old).

[¶22] The child testified Huether did “nasty stuff” to her like “reaching his hands in [her] crotch and putting his penis in [her] crotch.”  The child also testified Huether “made [her] lick his penis.”  The uncorroborated testimony of a child is sufficient to sustain a conviction for gross sexual imposition.  
State v. Grant
, 2009 ND 210, ¶ 24, 776 N.W.2d 209.  Here, however, the jury also saw a videotaped interview of the child by a forensic interviewer at the Northern Plains Children’s Advocacy Center in Minot in which the child detailed several acts of sexual contact by Huether.  The jury also heard a recording of the incriminating statements made by Huether at the Fargo house in which Huether admitted he had engaged in oral sex with the child.  Viewed in the light most favorable to the verdict, we conclude the evidence is sufficient to support the guilty verdict.

VII

[¶23] We affirm the judgment.

[¶24] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.