Filed 10/17/06 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2006 ND 211

State of North Dakota, Plaintiff and Appellee

v.

Alan Daniel Sevigny, Defendant and Appellant

No. 20050315

Appeal from the District Court of Pembina County, Northeast Judicial District, the Honorable Laurie A. Fontaine, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Barbara L. Whelan, Special Assistant State’s Attorney, 8546 141st Avenue Northeast, Crystal, N.D. 58222, for plaintiff and appellee.

Jay D. Knudson, Reichert Law Office, 218 South 3rd Street, Grand Forks, N.D. 58201, for defendant and appellant.

State v. Sevigny

No. 20050315

Kapsner, Justice.

[¶1] Alan Sevigny appeals from a criminal judgment entered after a jury found him guilty of two counts of gross sexual imposition.  Sevigny claims the district court abused its discretion in excluding evidence of an alibi defense, admitting testimony about out-of-court statements of the child accusers, denying his request to alter the sequence of the State’s presentation of witnesses, and finding Sevigny’s attorney in contempt during closing arguments.  We affirm.  

I

[¶2] On November 16, 2004, seven-year-old S.J.M. engaged in a conversation with her first grade teacher, Patricia Barta, while they were alone in the classroom during recess.  S.J.M. told Barta about visiting her father who lived with his sister and Alan Sevigny.  S.J.M. said she did not like Sevigny because he does “mean disgusting things to children,” and he did these things to her.  S.J.M. also said Sevigny tickled her.  Barta asked where he tickled her and S.J.M. pointed to her lower abdomen and upper thighs.  On November 23, 2004, S.J.M. again talked to Barta about visiting her father and said Sevigny did disgusting things to children.  Barta asked S.J.M. if she had to take her clothes off or if Sevigny took his clothes off, and S.J.M. answered yes to both questions.  S.J.M. told Barta, “Alan likes to press it against little girls.”  

[¶3] On November 30, 2004, after S.J.M.’s allegations were reported to social services, she was taken to the Children’s Advocacy Center at MedCenter One in Bismarck.  Paula Condol, a forensic interviewer, conducted a videotaped interview with S.J.M.  During the interview, S.J.M. told Condol that Sevigny was only wearing a shirt and rubbed his “private part” on her “private part.”  She also told  Condol that another child, S.S., was in the room when this happened and that he did it to her too.  S.J.M. only recalled the one incident, and said it occurred a long time ago when her father was moving into Sevigny’s house.

[¶4] As a result of the interview with S.J.M., on December 2, 2004, Elizabeth Suda, a licensed social worker for Pembina County Social Services, received a report that  seven-year-old S.S. may have been sexually abused by Sevigny.  Suda went to S.S.’s elementary school to interview her.  Pembina County Sheriff’s Deputy Steve Yttredahl was present during the interview and took notes.  Using drawings of a female child’s body, S.S. told Suda about an incident that occurred during Christmas vacation in 2003 when she was getting ready to take a shower and Sevigny came into the bathroom and touched her vaginal area, butt, and chest.  S.S. also described in detail several other occasions when Sevigny sexually abused her, including an incident on the living room couch when Sevigny touched her underneath her bath towel and touched the inside of her body with his hands where she “pees and poops.”  S.S. said the touches felt funny and sometimes hurt, and it would hurt when she went to the bathroom after these incidents.  Suda asked if Sevigny ever asked S.S. to touch him, and S.S. used a drawing of the male body to point to where he asked her to touch him, including the penis, stomach, arm, elbow, butt, and chest.  S.S. told Suda the incidents happened too many times to remember, but she believed it started when she was in kindergarten. 

[¶5] On December 14, 2004, S.S. was taken to the MeritCare Coordinated Treatment Center in Fargo, where Brenda Martin, a forensic interviewer, conducted a videotaped interview with S.S.  S.S. told Martin the incidents with Sevigny began when she was in kindergarten and said it happened “too many times for me to remember.”  S.S. drew pictures to help tell Martin about an incident in the summer when she was home alone with Sevigny.  She drew a picture of the layout of her house and told Martin that she was walking to her bedroom wearing only a towel after her shower and Sevigny grabbed her, pulled her on to the couch and squeezed her butt.  She also said he touched her “privates,” butt, and chest, and he asked her to touch his “privates.”  S.S. drew an anatomically correct picture of what Sevigny’s genitals looked like.  After the interview, S.S. was examined by Dr. Alonna Norberg.  S.S. told Dr. Norberg that Sevigny would touch her inside where she “pees and poops” and it would often hurt afterward when she would go to the bathroom.  

[¶6] Sevigny was arrested in December 2004, and charged with two counts of gross sexual imposition.  The criminal complaint alleged Sevigny committed numerous incidents of sexual assault on S.S. between September 2003 and December 2004, and alleged Sevigny committed numerous incidents of sexual contact against S.J.M. between September 2002 and November 2004.  The complaint was later amended to allege Sevigny committed numerous incidents of sexual contact against S.J.M. between August 2002 and November 2004.

[¶7] Before trial, the State moved for the admission of S.S. and S.J.M.’s out-of-

court statements under N.D.R.Ev. 803(24).  At a March 2005 hearing, Barta; Condol; Martin; Suda; Roberta Carson, S.S.’s therapist; Kyann Schneider, S.J.M.’s therapist; and S.J.M.’s mother testified about statements S.S. and S.J.M. made to them.  The videotaped interviews of S.S. and S.J.M. were also played for the court.  The district court granted the State’s motion to allow Barta, Condol, Martin, Suda, Carson, and Schneider to testify to S.S. and S.J.M.’s out-of-court statements.  The court denied the request to permit S.J.M.’s mother to testify, finding her testimony was confusing as to the dates and times S.J.M.’s statements were made.

[¶8] At an April 2005 jury trial, S.S. and S.J.M. testified, but were reluctant to discuss what happened and gave limited testimony.  Both girls confirmed they had been sexually abused by Sevigny, although S.S.’s testimony was very limited.  The jury was shown the girls’ videotaped interviews, and Barta, Condol, Martin, Suda, Carson, and Schneider testified about the statements the girls made to them.  Dr. Norberg also testified about the statements S.S. made during her examination, and based upon S.S.’s statements, Dr. Norberg testified with a reasonable degree of certainty that S.S. was sexually abused.  During the trial, Sevigny attempted to raise an alibi defense for the dates of one of the alleged incidents with S.S.  The State moved to deny admission of any alibi evidence.  The court granted the State’s motion because Sevigny failed to give notice of his alibi defense under N.D.R.Crim.P. 12.1, which sets out the rules for admission of alibi evidence.

[¶9] The jury found Sevigny guilty on both counts of gross sexual imposition, and he received concurrent sentences of 20 years imprisonment, with 15 years suspended for the acts against S.S., and 10 years imprisonment, with 5 years suspended for the acts against S.J.M.   

II

[¶10] Sevigny argues the district court abused its discretion in refusing to allow the introduction of his alibi evidence after finding Sevigny did not have “good cause” for failing to provide notice of his alibi defense under N.D.R.Crim.P. 12.1.  Sevigny also claims his Due Process rights under the United States Constitution were violated because the court did not allow him to testify about his alibi.  

A

[¶11] Rule 12.1(a), N.D.R.Crim.P., provides, “[a] defendant who intends to offer an alibi defense must serve written notice on the prosecuting attorney of any intended alibi defense and file the notice within the time provided for the making of pretrial motions or afterward as the court directs.”  If the defendant fails to comply with the notice requirement, “the court may exclude the testimony of any undisclosed witness regarding the defendant’s alibi.  This rule does not limit the defendant’s right to testify.”  N.D.R.Crim.P. 12.1(e).  The main purpose of the rule requiring notice of an alibi defense is to prevent surprise.  
State v. Flohr
, 301 N.W.2d 367, 371 (N.D. 1980).

[¶12] A district court’s decision to exclude evidence of an alibi under N.D.R.Crim.P. 12.1 is reviewable under the abuse of discretion standard.  
Flohr
, at 372.  A court abuses its discretion if it acts unreasonably, arbitrarily, or capriciously, or if it misinterprets or misapplies the law.  
State v. Ramsey
, 2005 ND 42, ¶ 8, 692 N.W.2d 498.  When determining whether to allow alibi evidence when the notice requirements of Rule 12.1 have not been met, “a court ought to take into account, among other particulars of the case, the actual prejudice that will redound to the prosecution if the testimony is allowed and whether the defendant’s failure to inform was in good faith and for good cause.”  
Flohr
, at 372.

[¶13] Sevigny argues he should have been allowed to present an alibi defense for one of the incidents S.S. claimed occurred during Christmas vacation in 2003.  Sevigny claimed he was not at home during that time period because he was working as a truck driver and was out of town.  However, Sevigny did not make a formal offer of proof to support his claim, and he did not provide notice of an alibi defense under N.D.R.Crim.P. 12.1(a).  During cross-examination of Suda, Sevigny’s attorney questioned her about the Christmas 2003 incident, and asked, “So you’re not aware of the fact that Mr. Sevigny wasn’t home at all during Christmas vacation 2003?”  The State objected to the question, and the court sustained the objection.  Later, the State moved to exclude all evidence related to Sevigny’s alibi defense, arguing he did not give proper notice.  Sevigny claimed he could not give proper notice because the complaint did not charge that the abuse occurred on specific dates, and instead alleged that the acts occurred over a period of three years.  Sevigny acknowledged that, during discovery, he received reports that indicated one incident occurred during Christmas vacation in 2003.  

[¶14] The district court concluded Sevigny failed to comply with the notice requirement of Rule 12.1, and therefore he was not entitled to present evidence of an alibi defense.  The court cited 
State v. Vance
, 537 N.W.2d 545 (N.D. 1995), in which this Court said time is not an element of the offense of gross sexual imposition, and an alibi defense is not likely to be a viable defense when a defendant has had continuous access to the child because the defendant is not asserting that he was not alone with the child, but instead is challenging the credibility of the child’s testimony.  
Id.
 at 551.  The district court concluded Sevigny did not have a right to an alibi defense under 
Vance
.  The court also said Sevigny had notice of the allegations for Christmas vacation in 2003 and did not have good cause for his failure to give notice of his intent to raise an alibi defense.

[¶15] Sevigny did not comply with the notice requirement of Rule 12.1.  The district court had discretion to exclude the evidence after considering the prejudice that would occur if the evidence was allowed and whether Sevigny’s failure to give notice was for good cause or in good faith.  Although Sevigny claims he had good cause because the allegations covered an extended period of time without alleging specific dates, Sevigny admitted he had received reports about the Christmas vacation 2003 incident before trial.  Sevigny had notice of the alleged dates and failed to provide timely notice of his alibi evidence.  We conclude the court did not act in an arbitrary, unreasonable, or unconscionable manner, and therefore did not abuse its discretion in excluding Sevigny’s alibi evidence.

B

[¶16] Sevigny also claims his constitutional rights were violated because he was not allowed to testify that he was not in town during Christmas vacation in 2003.  

[¶17] Sevigny urges this Court should adopt the holding of 
Alicea v. Gagnon
, 675 F.2d 913, 923 (7th Cir. 1982), that a defendant has a constitutional right to testify truthfully, and it is a violation of the defendant’s constitutional rights to exclude the defendant’s alibi testimony under Rule 12.1 if a defendant fails to comply with the Rule’s notice requirement.  
But see
 
State v. Burroughs
, 344 N.W.2d 149, 155-56 (Wis. 1984) (excluding a defendant’s alibi testimony for failure to give notice does not deny the defendant the right to testify).  But, we do not need to decide whether excluding a defendant’s alibi testimony is a violation of his constitutional right to testify, because in 
Flohr
, 301 N.W.2d at 372 (citations omitted), we discussed when a court can exclude evidence for failure to give notice, and we said:

Excluding evidence can be an appropriate means for dealing with a recalcitrant defendant.  An absolute bar to defendant’s evidence is of course unacceptable, but selective use of the sanction does not necessarily offend the standard fairness which the Sixth Amendment requires above all.  Rule 12.1 certainly does not represent an unconditional restriction on a defendant’s ability to make out his case.  The defendant is forbidden nothing, but is required only to proceed in a certain manner.  The rule upholds in all cases an opportunity of the defendant himself to give alibi testimony.

 

We specifically said Rule 12.1 does not limit the defendant’s right to personally give alibi testimony, and therefore if the district court excluded Sevigny’s testimony about his alibi it would be error. 

[¶18] The district court’s ruling on the alibi defense came during the trial.  After the court announced its ruling, Sevigny’s attorney asked the court to reconsider its decision and allow Sevigny to testify about where he was during Christmas vacation 2003.  The court said to Sevigny’s attorney, “If the testimony that you’re going to put forth is specifically I wasn’t there or he wasn’t there from this date to this date when she said, that to me is an alibi defense, I wasn’t there.”  The court refused to reconsider its ruling.  Based on the court’s statements about the alibi evidence, it is unclear whether the court would have allowed Sevigny to testify about his alibi.  Sevigny did not attempt to give testimony about his alibi defense and there was not a court order specifically excluding Sevigny’s testimony.  We conclude the court did not improperly exclude Sevigny’s testimony because Sevigny never attempted to testify about his alibi.

[¶19] Assuming the court’s order can be interpreted to exclude Sevigny’s testimony, a defendant is entitled to a fair trial, not a perfect trial.  
State v. Johnson
, 379 N.W.2d 291, 294 (N.D. 1986) (defendant entitled to fair trial).  Even if we were to agree with Sevigny that the court excluded his testimony and denied his constitutional right to testify, even constitutional errors do not automatically require reversal if the error is harmless beyond a reasonable doubt.  
State v. Blue
, 2006 ND 134, ¶ 29, 717 N.W.2d 558 (harmless error standard).  “Before determining an error is harmless beyond a reasonable doubt, the court must review the entire record and determine, in light of all of the evidence, the probable effect of the alleged error upon the defendant’s rights.”  
Id.
 at ¶ 29.  A federal constitutional error is harmless if we are convinced the error did not contribute to the verdict.  
Id.
 

[¶20] We conclude any exclusion of Sevigny’s testimony about his alibi was harmless beyond a reasonable doubt.  Sevigny did not make an offer of proof to show that he had an alibi for the allegation of sexual assault on S.S. during the 2003 Christmas vacation. Moreover, Sevigny had continuous access to S.S.  We have said that time is not an element of the offense of gross sexual imposition and an alibi defense is not likely to be a viable defense when a defendant has continuous access to a child, especially since it may be impossible to specify when an event occurred if the allegations are by a minor child.  
Vance
, 537 N.W.2d at 551.  Sevigny claimed an alibi for one incident out of several alleged incidents with S.S., and we are not persuaded his claimed alibi would necessarily have made an acquittal more likely.  On this record, we conclude any exclusion of Sevigny’s testimony about his alibi is harmless beyond a reasonable doubt.  

C

[¶21] In his reply brief, Sevigny claims his trial lawyer’s failure to provide notice of an alibi defense amounted to ineffective assistance of counsel.  

[¶22] Ineffective assistance of counsel claims should be resolved in a post conviction proceeding “so the parties can fully develop a record on the issue of counsel’s performance and its impact on the defendant’s claim.”  
State v. Bertram
, 2006 ND 10, ¶ 39, 708 N.W.2d 913.  We will not address issues raised for the first time in an appellant’s reply brief because the reply brief is limited to issues raised in the appellee’s brief.  
Hendrickson v. Hendrickson
, 2000 ND 1, ¶ 20, 603 N.W.2d 896.  Sevigny raised this issue for the first time in his reply brief, and we will not consider it in this appeal.  

III

[¶23] Sevigny argues the district court abused its discretion in admitting into evidence testimony about the children’s out-of-court statements under N.D.R.Ev. 803(24), because the evidence was insufficient in reliability of time, content, and circumstances of the statements, and the court did not make sufficient findings of fact.  Sevigny also claims a violation of his Sixth Amendment right to confront his accuser. 

A

[¶24] We review a district court’s evidentiary ruling under an abuse-of-discretion standard.  
Ramsey
, 2005 ND 42, ¶ 8, 692 N.W.2d 498.  A district court abuses its discretion when it “acts arbitrarily, capriciously, or unreasonably or if it misinterprets or misapplies the law.”  
Id.
  

[¶25] Testimony about a child’s out-of-court statements about sexual abuse is admissible under N.D.R.Ev. 803(24), which provides:

An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not otherwise admissible under another hearsay exception) if:

(a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the time, content, and circumstances of the statement provide sufficient guarantees of trustworthiness; and

(b) The child either:

(i) Testifies at the proceedings; or

(ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

 

Factors the court must consider when deciding whether to admit a child’s out-of-

court statements are the spontaneity and consistent repetition of the statements, the mental state of the declarant, the use of terminology unexpected of a child of similar age, and a lack of a motive to fabricate.  
State v. Hirschkorn
, 2002 ND 36, ¶ 13, 640 N.W.2d 439.  “A [district] court must make explicit findings as to what evidence it relied upon regarding the factors and explain its reasons for either admitting or excluding the testimony so a defendant can be assured the required appraisal has been made . . . .”  
Id.
  The court must make specific findings of fact relevant to reliability and trustworthiness and explain how the facts support the court’s conclusion of admissibility.  
Id.
 at ¶ 18.  Non-detailed findings may be sufficient when there is an adequate factual basis in the offer of proof to support the court’s decision.  
Id.
  On review, we are limited to reviewing the offer of proof made during the pretrial hearing.  
Id.
 

[¶26] In this case, the district court made the following findings when it granted the State’s motion to admit the children’s out-of-court statements under N.D.R.Ev. 803(24):

The Court specifically finds in regards to Liz Suda that she’s a licensed social worker, that she was the first person who had contact with the minor child, S.S., that she has special training to interview children, and did not ask any leading questions that in the Court’s opinion would have led to any statements made alleging sexual contact.  I find that that statement, based on those specific facts, hearsay statement, is credible.  

In regard to Brenda Martins and Paula Condol, both of those women performed a videotaped interview with—each of them with one minor child.  There are two minor child victims.  Both of these women have done this type of work.  I’m not going to go through specifically.  Their credential [sic] speak for themselves, but they have special training that I reviewed the videotapes they made, and the questions they asked.  The majority of those questions were not leading.  Circumstances to me demonstrate sufficient guarantee of trustworthiness of the videotaped statements.  

Patricia Barta is a [first] grade school teacher of the minor child S.M., the statements made to her were without any prompting whatsoever.  They were unsolicited statements to her [first] grade teacher with no prompting whatsoever, and no questioning whatsoever.  They were made during periods of school when the teacher was alone with the minor child S.M. . . . 

The Court would note that based on those circumstances, I find sufficient guarantees of trustworthiness and Bobby Carson and Ms. Schneider are both seeing this children [sic].  

Also respectively, Ms. Carson is seeing the minor child S.S.; Ms. Schneider is seeing the minor child S.M. in a therapeutic setting.   Some very minimal statements have come out to them during the therapeutic sessions, that both of these individuals have educational background and training to perform therapeutic counseling with the children.  That the manner in which the statements have come out have been during a course of therapy, not within—over a course of therapy, not in the initial session.  The Court finds that the questions were not leading, that there were no circumstances that would have caused the statements  to be unreliable in the therapeutic session, and finds those statements to have sufficient guarantees of trustworthiness.

 

. . . . 

 

I don’t find the statements to be necessarily cumulative.  None of them are the same person testifying repetitively to the same statement.  I admit that the State omitted Deputy Yttredahl and Susan Fetch-Crockett.  I don’t know what she would have testified to, but the Court would grant the motion if they were repetitive, two witnesses testifying on this date, they said this statement.

None of these witnesses are that way, and there are two children involved, so all of these witnesses are not in regard to one child, in fact, they’re fairly equally divided among the minor child S.S., and the minor child S.M.

I specifically also find that the children will be testifying at trial.  That’s anticipated, as stated, and indicated in the motion by the State, and that the children are clearly under the age of 12 as required by the rule. 

 

[¶27] While the district court could have given a more detailed explanation of its decision, its findings are adequate and there is sufficient information from the pretrial hearing to support the court’s decision.  The court heard testimony from each of the individuals the children made the statements to, and the court viewed the children’s videotaped interviews.  Suda, Martin, Condol, Carson, and Schneider each gave extensive testimony on their training and the methods they use to question children about sexual abuse.  Each individual testified to when the statements took place, what the environment was like during the questioning, who was present, what type of questions the girls were asked, whether the questions were leading, and how many times the girls had been interviewed.  The children’s statements to the witnesses were consistent, although both children were very reluctant to discuss the abuse.  Both children used pictures to aid the discussion during the forensic interviews.  S.S. used drawings to help facilitate the discussion, including drawing the layout of her house and where people were when one incident occurred.  S.S. drew an accurate picture of the male anatomy, which is not expected from a seven-year-old.  There was also no evidence of any motive to fabricate these stories.  The court had sufficient information to assess the reliability of the out-of-court statements.  We conclude the district court did not abuse its discretion in admitting the State’s motion to admit the children’s out-of-court statements.

B

[¶28] Sevigny also argues his Sixth Amendment right to confront his accuser was violated.  Our standard of review for violations of constitutional rights is de novo.  
State v. Messner
, 1998 ND 151, ¶ 8, 583 N.W.2d 109.  

[¶29] In 
Blue
, 2006 ND 134, ¶ 7, 717 N.W.2d 558, we clarified when a witness testifying to a child’s out-of-court statements about sexual abuse violates a defendant’s constitutional right to confront his accuser.  We held an out-of-court testimonial statement may not be admitted into evidence when the child is unavailable to testify unless the defendant has had an opportunity to cross-examine the child.  
Id.
 at ¶ 8.  We also said, 

If a defendant has an opportunity to cross-examine the witness at trial, the admission of testimonial statements would not violate the Confrontation Clause.  The core constitutional problem is eliminated when there is confrontation.  
Crawford
 makes clear that, “when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . .”

 

Id.
 at ¶ 23 (citations omitted) (quoting 
Crawford v. Washington
, 541 U.S. 36, 59-60 n.9 (2004)).  In this case, S.S. and S.J.M. both testified at the trial and Sevigny had the opportunity to cross-examine both children.  We conclude Sevigny’s Sixth Amendment rights were not violated.  

IV 

[¶30] Sevigny argues the district court abused its discretion in denying his request to require S.S. and S.J.M. to testify before the State’s other witnesses.  He claims it was highly prejudicial for other witnesses to give testimony about S.S. and S.M.J.’s out-of-court statements before the children testified.   

[¶31] Under N.D.R.Ev. 611(a), the court shall “exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.”  The court is given “wide discretion over the mode and order of interrogating witnesses and presenting evidence, and the [district] court’s rulings in that respect will not be disturbed on appeal unless the record establishes that the discretion was abused to the prejudice of the complainant.”  
Graber v. Engstrom
, 384 N.W.2d 307, 311 (N.D. 1986). 

[¶32] Sevigny asked the court to require the children to testify first in order to eliminate any taint or prejudice the jury may have if it heard the children’s out-of-

court statements first.  He argued that the children must testify in order to admit the out-of-court statements under N.D.R.Ev. 803(24), and therefore the court should have required them to testify first.  The district court balanced Sevigny’s rights and the State’s rights to choose the order in which it presented its witnesses, and concluded Rule 803(24) does not require a child to testify first.  The court said Sevigny would be entitled to an acquittal if the child witnesses did not testify, which was sufficient to satisfy Sevigny’s concerns.  

[¶33] Sevigny alleges he was prejudiced because the jury heard the children’s out-

of-court statements before it heard the children’s testimony.  Sevigny claims the State’s presentation of evidence was highly prejudicial because the children’s testimony was confusing and hardly incriminating, and the jury would have had a different picture of the events if the children had testified first.  Sevigny does not explain how the sequence of testimony would have changed the outcome of the trial.  The jury heard the children’s testimony and Sevigny had the opportunity to cross-

examine the children.  The children’s testimony, particularly S.J.M.’s testimony, confirmed what the jury heard from the other witnesses.  We conclude the court did not abuse its discretion in denying Sevigny’s request.   

V

[¶34] Sevigny claims the district court abused its discretion in finding his attorney in contempt of court in the presence of the jury.  He argues the court erred in concluding an attorney may not give his opinion about evidence during closing argument, but admits his attorney continued to state his opinion after the court warned his attorney that he was not allowed to state his personal opinion in his argument.  Sevigny claims the court’s finding of contempt in front of the jury had a prejudicial effect on the jury, and should have been done at a sidebar or out of the presence of the jury.

[¶35] During Sevigny’s closing argument, the State objected on numerous occasions.  The State first objected after Sevigny’s attorney addressed two members of the jury by name, arguing it is improper to personally address the members of the jury.  The court sustained the State’s objection.  The State objected after Sevigny’s attorney said, “I have watched several videos of people being interviewed, even children in situations like this.  I have never seen . . . a worse—”  The court sustained that objection and advised the jury that information from the attorney’s personal background are not facts that are in evidence.  The State raised a third objection after Sevigny’s attorney told the jury the State had complete access to S.S. before trial.  The court sustained that objection, concluding the attorney was arguing facts not in evidence.  The State objected a fourth time, after Sevigny’s attorney told the jury he was not allowed to interview S.S. in a normal manner.  The State objected a fifth time, after Sevigny’s attorney said: 

And then I asked him if he did any of these acts that he was charged with or if he had any idea of what they were talking about as far as the incidences.  And [Sevigny] gave the expected answer; “No.”  But I think it was sincere.  I think it was a sincere answer—

 

The court sustained the objection and warned the attorney that he could not voice his personal opinion.  Later, Sevigny’s attorney said:

He was upset that his daughter hadn’t seen her mother.  And upset that he had to go through this whole process and not just the trial when he swore to you that he hadn’t done any of these acts.  

I can’t tell you what I think or the Judge will probably rap me again—

 

The court warned Sevigny’s attorney he would be held in contempt if he continued to mention his personal opinion or his disagreement with the court.  After receiving the judge’s warning, Sevigny’s attorney said, “The conduct of social service toward Cheryl and toward S.[S.] I believe borders on abuse.”  The judge asked the attorney if he said that he believes it borders on abuse and the attorney said yes, “That’s my belief.  That’s my belief.”  The judge held Sevigny’s attorney in contempt and fined him $500.  

[¶36] Section 27-10-01.1(1), N.D.C.C., defines contempt of court as: 

a. Intentional misconduct in the presence of the court which interferes with the court proceeding or with the administration of justice, or which impairs the respect due the court;

 

. . . .

 

c. Intentional disobedience, resistance, or obstruction of the authority, process, or order of a court . . . . 

 

“The ultimate determination of whether a contempt has been committed is within the [district] court’s sound discretion[,]” and the court’s decision will not be overturned unless there is a plain abuse of discretion.  
City of Grand Forks v. Dohman
, 552 N.W.2d 69, 70 (N.D. 1996).  We will not find a court abused its discretion “‘if the decision is the product of a rational mental process in which the facts and law are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.’”  
Id.
 at 70-71 (quoting 
Gissel v. Kenmare Twp.
, 512 N.W.2d 470, 473 (N.D. 1994)).   

[¶37] Intentional disobedience of a court order constitutes contempt, and absent a showing that an order is transparently invalid or frivolous, the order must be obeyed until stayed or reversed by orderly review.  
State v. Zahn
, 1997 ND 65, ¶¶ 12-14, 562 N.W.2d 737.  The court ordered Sevigny’s attorney not to give his personal belief during his closing argument, and the order was not transparently invalid or frivolous.  
See
 
State v. Clark
, 2004 ND 85, ¶ 9, 678 N.W.2d 765 (prosecutor may not create evidence by argument or by incorporating personal beliefs into closing argument).  Sevigny’s attorney did not obey the court’s order and the intentional failure to obey the court’s order constitutes contempt.  The court warned Sevigny’s attorney that if he continued disobeying its order to refrain from giving his personal opinion he would be held in contempt.  After the attorney intentionally disregarded the court’s order, the court found him in contempt.  We conclude the district court did not abuse its discretion in finding Sevigny’s attorney in contempt of court. 

[¶38] Sevigny claims the court should not have found his attorney in contempt in front of the jury because it had a prejudicial effect on the jury.  While we recognize that it is preferable for the court to discuss the attorney’s behavior out of the presence of the jury, the court must stop any disrespectful behavior, and when previous warnings fail to work, we cannot conclude the court abused its discretion by finding the attorney in contempt in front of the jury.  Any prejudicial effect the court’s order may have had can ordinarily be cured with an instruction to the jury that the attorney’s sanction should in no way affect the jury’s consideration of the evidence or of whether the state has met its burden of proof.  
See, e.g.
, 
State v. Conroy
, 484 A.2d 448, 454 (Conn. 1984); 
People v. Fox
, 532 N.E.2d 472, 479 (Ill. App. 1988); 
People v. Williams
, 414 N.W.2d 139, 141 (Mich. App. 1987).  Although the district court did not give the jury a curative instruction, Sevigny does not explain how the court’s contempt decision prejudiced the jury against him.  Sevigny’s attorney was found in contempt during the closing argument and the court’s decision did not limit the presentation of evidence.  We conclude Sevigny was not prejudiced by the court’s decision to find his attorney in contempt in front of the jury.    

VI

[¶39] We conclude the district court did not abuse its discretion in excluding evidence of Sevigny’s alibi defense, admitting testimony about the out-of-court statements of the child accusers, denying Sevigny’s request to change the sequence of the State’s witnesses at trial, and finding Sevigny’s attorney in contempt during closing arguments.  We affirm the judgment.    

[¶40] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.