2007 ND 131

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Shannon Renee MUHLE, Defendant and Appellant.**

No. 20060340.

Supreme Court of North Dakota.

Aug. 22, 2007.

Mark R. Boening, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Ross W. Brandborg, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Shannon Muhle appeals from the district court judgment entered after a jury convicted her of gross sexual imposition and abuse or neglect of a child. Concluding that the children's pre-trial statements were properly admitted, that the prosecutor did not violate discovery rules, and that the evidence supports the verdict, we affirm.

I

[¶ 2] Shannon and Andrew Muhle are married and have three minor children, S.M., K.E., and G.E. On August 31, 2005, Tammy Anderson of Cass County Social Services interviewed all three Muhle children because of G.E.'s alleged sexual contact with a neighbor girl and with his half sister, S.M. Detective Timothy Runcorn took notes and made an audio recording of the interviews. According to Detective Runcorn's notes, both G.E. and S.M. had sexual contact with their parents, and K.E. had watched them. His notes also revealed that Andrew Muhle played a "secret game" with S.M. that included oral sex and intercourse, and that "sometimes Mom watches." During the interview, S.M. said this occurred in her parents' bedroom and downstairs on the couch. S.M. said the last time this happened was "Saturday." K.E. said he "spies" on his father and S.M. while they have "lots of sex." K.E. said Shannon Muhle did not know about it. K.E. also said that S.M. and G.E. have had sex in the basement. K.E. said he had heard Shannon Muhle say "let's go have sex" to G.E. K.E. said he then watched them go downstairs and listened to them making the same noises he had heard his mother and father make when they have sex. G.E. did not provide many details other than his statement that "bad things" happened at home. Anderson and Runcorn ended the August 2005 interview after they concluded they had enough evidence to remove the children and place them in protective custody. When they told G.E. that all three children would be taken away from their parents, he became "extremely upset" and said "we're not supposed to talk about that stuff any more." On the basis of the interviews and the examination of S.M., the Muhle children were placed in foster care. K.E. and G.E. were placed together, and S.M. was placed with another foster family.

[¶ 3] On September 1, 2005, Alonna Norberg, M.D., examined S.M. Dr. Norberg is a board-certified pediatrician who specializes in the diagnosis of child maltreatment including sexual abuse. According to Dr. Norberg's testimony, an accurate diagnosis requires taking a medical history directly from the child if the child is capable of understanding the questions and is developmentally able to articulate complaints, which she said S.M. was capable of doing. Furthermore, she testified that recording the child's terminology is important. Dr. Norberg testified that minor injuries to the genitalia of a child

S.M.'s age heal within two to seven days and do not typically leave scars. Dr. Norberg testified S.M.'s main complaint to her was: "That daddy put his penis in my pussy," and "about her daddy peeing on her pussy, putting things into her hole or her pussy." Dr. Norberg discovered redness, abrasions, and cuts on S.M.'s genitalia. On the basis of the medical history and the physical examination, Dr. Norberg concluded that S.M. was the victim of "penetrating sexual abuse."

[¶ 4] In October 2005, the State charged Shannon Muhle with abuse or neglect of S.M. The State alleged that she "was aware of, but did nothing to stop, the fact that her husband, Andrew Bice Muhle, engaged in a sex act with their daughter, S.M. . . . ." The State also charged Shannon Muhle with gross sexual imposition, alleging "that on one or more occasion . . . Shannon Renee Muhle engaged in a sex act with G.E. . . . ." The State charged Andrew Muhle with two counts of gross sexual imposition and abuse or neglect of a child.

[¶ 5] In May 2006, the State prepared the children to testify at trial; however, the prosecutor did not take notes or otherwise record the witness preparation sessions. Before trial, the State moved the court to determine whether audiotaped August 2005 interviews with the children were admissible. After a hearing, the district court ruled the statements of S.M. and K.E. were admissible. The court said it would not rule on the admissibility of G.E.'s statement because the State did not state an intent to offer that out-of-court statement at trial.

[¶ 6] On May 10–12, 2006, Shannon and Andrew Muhle were tried together before a jury. In his opening statement, the prosecutor referred to the likelihood that the content of the August 2005 interviews would be offered into evidence—if the children testified and were subject to cross-examination. The State told the district court that it would not be offering G.E.'s August 2005 statement. All three of the Muhle children testified and were subject to cross-examination at trial. At the time of trial, the three children were nine, seven, and five years of age. The statements of S.M. and K.E. were offered and admitted into evidence, except for the portion of their statements about being spanked, which were redacted by order of the court. The district court decided those statements might prejudice the defendants and confuse the jury, especially in light of the neglect or abuse charges. The jury listened to the audiotaped interviews, and they were given transcripts to follow during the playing of the tape. The transcripts were not offered as evidence.

[¶ 7] At trial, Shannon Muhle denied ever having sex with any of her children and denied knowing about any abuse of the children by her husband. The jury found Shannon Muhle guilty on all counts. She now appeals.

[¶ 8] The district court had jurisdiction of the criminal proceeding under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal from the criminal judgment was timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

II

[¶ 9] Muhle contends the district court erred in admitting the children's prior out-of-court statements.

[¶ 10] "We review a district court's evidentiary ruling under an abuse-of-discretion standard." *State v. Sevigny*, 2006 ND 211, ¶ 24, 722 N.W.2d 515. "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreason-

ably or if it misinterprets or misapplies the law." *Id.* (internal quotation and citation omitted).

[¶ 11] A child's out-of-court statements about sexual abuse are admissible under N.D.R.Ev. 803(24), which provides:

> An out-of-court statement by a child under the age of 12 years about sexual abuse of that child or witnessed by that child is admissible as evidence (when not otherwise admissible under another hearsay exception) if:
>
> (a) The trial court finds, after hearing upon notice in advance of the trial of the sexual abuse issue, that the *time, content,* and *circumstances* of the statement provide sufficient *guarantees of trustworthiness; and*
>
> (b) The child *either:*
>
> (i) *Testifies at the proceedings;* or
>
> (ii) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

N.D.R.Ev. 803(24) (emphasis added); *see, e.g., State v. Blue,* 2006 ND 134, ¶ 26, 717 N.W.2d 558.

[¶ 12] *State v. Messner* set forth factors to be considered for Rule 803(24) trustworthiness: (1) "spontaneity and consistent repetition" of the statements, (2) "the mental state of the declarant," (3) "use of terminology unexpected of a child of similar age," and (4) "a lack of motive to fabricate." *State v. Messner,* 1998 ND 151, ¶ 15, 583 N.W.2d 109 (citing *Idaho v. Wright,* 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).

> These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining "particularized guarantees of trustworthiness" under the [Confrontation] Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.

*Wright,* 497 U.S. at 822, 110 S.Ct. 3139. These factors have continuing vitality despite our having partially overruled *Messner* in light of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004):

> The district court erred as a matter of law in determining the child was unavailable and that "reliability and trustworthiness" can supersede the constitutional demand of confrontation. The "reliability and trustworthiness" factors found in *[State v.] Hirschkorn,* 2002 ND 36, ¶¶ 12–13, 640 N.W.2d 439 and *Messner,* 1998 ND 151, ¶ 15, 583 N.W.2d 109, were created in reliance upon *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and its progeny. The reliability and trustworthiness factors are still to be used for nontestimonial statements. *United States v. Brun,* 416 F.3d 703, 707 (8th Cir.2005). But when testimonial statements are at issue, the constitutional right to confrontation cannot be superseded by reliability and trustworthiness. *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. To the extent *Hirschkorn,* 2002 ND 36, 640 N.W.2d 439, and *Messner,* 1998 ND 151, 583 N.W.2d 109, contradict the holding in *Crawford,* they are necessarily overruled.

*Blue,* 2006 ND 134, ¶ 21, 717 N.W.2d 558; *see, e.g., Sevigny,* 2006 ND 211, ¶¶ 25–27, 722 N.W.2d 515 (applying the *Messner* factors). Furthermore:

> "A [district] court must make explicit findings as to what evidence it relied upon regarding the factors and explain its reasons for either admitting or excluding the testimony so a defendant can

be assured the required appraisal has been made...." The court must make specific findings of fact relevant to reliability and trustworthiness and explain how the facts support the court's conclusion of admissibility. Non-detailed findings may be sufficient when there is an adequate factual basis in the offer of proof to support the court's decision. On review, we are limited to reviewing the offer of proof made during the pretrial hearing.

*Sevigny,* at ¶ 25 (internal citations omitted).

■ [¶ 13] In this case, the district court made the following findings, in part, in its pretrial order and granted the State's motion to admit S.M.'s and K.E.'s out-of-court statements under N.D.R.Ev. 803(24):

A. S.M.'s statement

1. Spontaneity and consistent repetition

[T]he majority of the substantive content of the statement comes from the mouth of S.M. in response to open-ended questions....

....

The Defendants point out, correctly, that the statement does contain inconsistencies.... These ... do detract from the guarantees of trustworthiness of the statement and would militate in favor of exclusion.

2. Mental state of the declarant

S.M.'s initial answers to some questions was that she forgot. However, when the same area was asked of again, S.M. provided consistent answers.... This factor favors admission of the statement.

3. Use of terminology

S.M. uses the word "penis" to describe the male genitalia.... This is not customary terminology for a five year old. This factor favors admission of the statement.

4. Lack of a motive to fabricate

There is no suggestion that S.M. has any history of fabricating or making up stories in the past. There is not even any argument that S.M. somehow is angry or upset with either of the Defendants and wants to get back at them or harm them in any way.... This factor favors admission of the statement.

On the whole, and taking the totality of the circumstances into account, and in weighing these factors, the Court finds that there are sufficient, particularized guarantees of trustworthiness surrounding this statement. Accordingly, the State's Motion is granted, subject to the availability of S.M. at the trial of this matter.

B. K.E.'s statement

1. Spontaneity and consistent repetition

At times the statement/interview of K.E. also contains leading questions from the interviewer. However, the majority of the substantive content of the statement comes from the mouth of K.E. in response to open-ended questions.... As with the statement of S.M., it appears to the Court that the majority of K.E.'s statement, and clearly the majority of the incriminating portions of the statement, are the result of spontaneous answers by K.E.

The Defendants point out, again correctly, that K.E.'s statement also contains inconsistencies.... These inconsistencies do detract from the guarantees of trustworthiness of the statement and would militate in favor of exclusion.

2. Mental state of the declarant

The Court is of the opinion that K.E. was, in his own way, like S.M.'s use of forgetfulness, trying to avoid, if possible discussing this matter. This evidences a mental state which favors admission of [ ] K.E.'s statement.

3. Use of terminology

He also uses the terms "penis" and "vagina." This is not customarily terminology for a seven year old. This factor slightly favors admission of the statement.

4. Lack of a motive to fabricate

The Defendants concede "there is no apparent motive to fabricate other than to please his interviewer and to end the interview as quickly as possible." There is no evidence, however, that K.E. thought giving a particular statement would either please his interviewer or result in a shorter interview. This factor favors admission of the statement.

. . . .

Those portions of K.E.'s statement dealing with spanking and "holding against the wall" are excluded from the trial of this matter and must be removed and redacted from any exhibit presenting the balance of [ ]K.E.'s statement to the jury.

On the whole, and taking the totality of the circumstances into account, and in weighing these factors, the Court finds that there are sufficient, particularized guarantees of trustworthiness surrounding K.E.'s statement. Accordingly, the State's Motion is granted in part, subject to the availability of K.E. at the trial of this matter.

[¶ 14] S.M. and K.E., both under 12 years of age and alleged victims of sexual abuse, testified at trial, were subject to cross-examination, and were cross-examined. The district court applied the four factors and found the out-of-court state-ments to be sufficiently trustworthy. The district court specifically referred to *State v. Messner* in analyzing whether the State had met its burden of establishing sufficient guarantees of trustworthiness. The jury heard testimony from each of those to whom the children made the statements, and the jury listened to S.M.'s and K.E.'s audiotaped interviews. The jury followed transcripts of the interview while the tape was played, but those transcripts were not admitted into evidence. The court had sufficient information to assess the reliability of the out-of-court statements. The district court did not abuse its discretion by admitting S.M.'s and K.E.'s prior out-of-court statements.

■ [¶ 15] Muhle contends the district court erred as a matter of law in failing to apply *Crawford* to analyze the admissibility of the children's statements.

[¶ 16] In *State v. Sevigny*, this Court addressed whether Sevigny's Sixth Amendment right of confrontation had been violated. *Sevigny*, 2006 ND 211, ¶ 28, 722 N.W.2d 515. We concluded that no violation had occurred because both children, whose out-of-court statements were admitted, testified at trial:

In *Blue*, 2006 ND 134, ¶ 7, 717 N.W.2d 558, we clarified when a witness testifying to a child's out-of-court statements about sexual abuse violates a defendant's constitutional right to confront his accuser. We held an out-of-court testimonial statement may not be admitted into evidence when the child is unavailable to testify unless the defendant has had an opportunity to cross-examine the child. *Id.* at ¶ 8. We also said,

If a defendant has an opportunity to cross-examine the witness at trial, the admission of testimonial statements would not violate the Confron-

*tation Clause. The core constitutional problem is eliminated when there is confrontation.* Crawford *makes clear that, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . ."*

*Id.* at ¶ 23 (citations omitted) (quoting *Crawford v. Washington*, 541 U.S. 36, 59–60 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). In this case, [both children] *testified at the trial and Sevigny had the opportunity to cross-examine both children. We conclude Sevigny's Sixth Amendment rights were not violated. Sevigny,* at ¶ 29 (emphasis added). The child in *State v. Blue* was available as a witness but did not testify, and the jury saw only a prior videotaped interview of the child. *Blue,* 2006 ND 134, ¶¶ 1, 8, 717 N.W.2d 558. This Court concluded the defendant's Sixth Amendment right of confrontation was violated. *Id.* at ¶ 32.

[¶ 17] Both K.E. and S.M. were available and testified at the trial, and Muhle had the opportunity to cross-examine both children. G.E. also testified at trial, but his prior statement was not admitted into evidence.

[¶ 18] The district court applied the correct legal standard.

### III

[¶ 19] Muhle contends the district court erred by failing to order a mistrial or to instruct the jury to disregard G.E.'s testimony because the State had failed to notify her that G.E. had disclosed inculpatory information during an unrecorded witness preparation session. The State argues it interviewed G.E. "to get a sense of what he might testify to at the jury trial."

[¶ 20] "The proper remedy for unfair surprise is a continuance," but one must be requested. *State v. Hirschkorn,* 2002 ND 36, ¶ 9, 640 N.W.2d 439, *overruled on other grounds, Blue,* 2006 ND 134, ¶ 21, 717 N.W.2d 558; *State v. Van Natta,* 506 N.W.2d 63, 69 (N.D.1993); *State v. Gross,* 351 N.W.2d 428, 433 (N.D. 1984).

[¶ 21] Muhle did not request a continuance; instead, she asked for a mistrial because she contended the State violated Rule 16, N.D.R.Crim.P, by failing to disclose the product of the State's pre-trial witness preparation sessions, which were not recorded.

[¶ 22] We review a district court's decision whether to grant a mistrial under an abuse of discretion standard. *State v. Klose,* 2003 ND 39, ¶ 48, 657 N.W.2d 276; *City of Bismarck v. Holden,* 522 N.W.2d 471, 476 (N.D.1994). "A district court abuses its discretion when it acts in an arbitrary, unreasonable, unconscionable, or capricious manner, or if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *State v. Wardner,* 2006 ND 256, ¶ 26, 725 N.W.2d 215.

[¶ 23] Only written or otherwise recorded statements are discoverable under Rule 16:

(f) Demands for Production of Names, Addresses, and Statements of Witnesses; Statements of Codefendants; Statements of Other Persons.

(1) Names, Addresses, and Statements of Prosecution Witnesses. Upon a defendant's written request, the prosecution must furnish the defendant:

. . . .

(B) any *statements* made by the listed prosecution witnesses; and

. . . .

(4) The term "Statement," as used in Rule 16(f) means:

(A) *a written statement* made by the witness, codefendant, or other person and signed or otherwise adopted by the declarant; or

(B) *a stenographic, mechanical, electronic, or other record, or a transcription of a record, which is a substantially verbatim recital of an oral statement made by the witness,* codefendant, or other person to an agent of the prosecution and recorded contemporaneously with the making of the oral statement.

N.D.R.Crim.P. 16(f) (emphasis added). Rule 16 "requires only 'statements' be disclosed by the prosecution. 'Statement' is defined quite technically and tends to emphasize formal, written, or recorded declarations." *State v. Charette,* 2004 ND 187, ¶ 17, 687 N.W.2d 484 (applying Rule 16 prior to its amendment, effective March 1, 2006); *see also State v. Ebach,* 1999 ND 5, ¶¶ 17–20, 589 N.W.2d 566 (unrecorded oral statements by defendant's former counsel discovered twenty minutes before trial were not "statements" subject to disclosure under Rule 16).

[¶ 24] In *Charette,* we said:

Rule 16 is a discovery rule, not a constitutional mandate, designed to further the interests of fairness. *State v. Ensminger,* 542 N.W.2d 722, 723 (N.D. 1996). Although the trial court may impose sanctions for a failure to comply with Rule 16, including prohibiting the delinquent party from introducing into evidence the material not disclosed under N.D.R.Crim.P. 16(d)(2), before the issue of sanctions becomes relevant there must be a threshold determination that Rule 16 was violated.

*Charette,* 2004 ND 187, ¶ 16, 687 N.W.2d 484.

[¶ 25] "When apprised of a discovery violation, a trial court is authorized by Rule 16(d)(2), N.D.R.Crim.P., to use various remedies, but should impose the least severe sanction that will rectify the prejudice, if any, to the opposing party." *State v. McNair,* 491 N.W.2d 397, 400 (N.D.1992). Rule 16(d)(2) provides:

Failure to Comply. If a party fails to comply with this rule or with an order issued under this rule, the court may:

(i) order that party to permit the discovery or inspection: specify its time, place and manner; and prescribe other just terms and conditions;

(ii) grant a continuance;

(iii) prohibit that party from introducing the undisclosed evidence;

(iv) relieve the requesting party from making a disclosure required by this rule; or

(v) enter any other order that is just under the circumstances.

[¶ 26] Muhle does not contend the State committed a *Brady* violation. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see, e.g., State v. Loughead,* 2007 ND 16, ¶¶ 19–20, 726 N.W.2d 859.

It must be noticed that [the *Brady* rule and Rule 16] are separate, distinct, and not necessarily related in any way to each other.

... the *Brady* rule and Rule 16 may compel discovery prior to the time when any witness testifies. The *Brady* rule, it must be emphasized, creates a duty of constitutional dimensions immediately upon the making of the demand, regardless of the stage of the proceedings at which the demand is made.

*State v. Hilling,* 219 N.W.2d 164, 170 (N.D.1974) (noting the distinctiveness of four methods of document discovery in a criminal case).

[¶ 27] During the August 2005 interview, G.E. said nothing about having had sexual contact of any kind with Shannon Muhle. In the charging document, filed in October 2005, the State listed all three children as prosecution witnesses. On December 1, 2005, Muhle filed a request for discovery:

> [W]ith her Demand for Discovery and Inspection *made pursuant to Rule 16 of the North Dakota Rules of Criminal Procedure* and hereby asserts as follows:
> . . . .
> 5. That the prosecution furnish to [Shannon Muhle] a written list of the names and addresses of all prosecution witnesses, and *any statements* made by them, whom the prosecution attorney intends to call in the preparation of the case in chief, together with any records of any prior felony convictions of any of those witnesses which are within the knowledge of the prosecuting attorney.
> . . . .
> 7. That the prosecution permit [Shannon Muhle] to inspect and copy or photograph *any relevant written or recorded statement of any person,* or copies thereof, within possession, custody, or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known to the prosecuting attorney.

(Emphasis added.) According to the State, during its witness preparation in May just days before the trial, "G.E. indicated to the prosecutor that he had had sex with defendant Shannon Muhle." The State admits there is no record of G.E.'s witness preparation. According to the State, it "did not otherwise notify counsel for either defendant Andrew Muhle or Shannon Muhle before trial of the fact that G.E. might now testify that he had had sex with defendant Shannon Muhle." A review of the transcript reveals that G.E. did

testify to having had sex with Shannon Muhle. G.E. also testified that K.E. had had sex with S.M., which was a new revelation to both the State and Muhle. In August 2005, K.E. told Tammy Anderson that G.E. had had sex with Shannon Muhle; however, K.E. did not testify to that at trial. Mule's contention, therefore, that G.E. provided the only evidence of gross sexual imposition fails. Because K.E.'s prior statement was properly admitted into evidence and because G.E. testified to having had sex with Shannon Muhle, the jury was offered evidence of gross sexual imposition from two sources.

[¶ 28] There was no written or otherwise recorded statement that was not disclosed as required by Rule 16(f)(4)(A) or (B). On appeal, Muhle makes only a bare assertion that the State intentionally tried to circumvent discovery by not recording the witness preparation. She offers no authority that supports her apparent contention that all witness preparation must be recorded. At trial, Muhle cross-examined G.E. and highlighted the obvious inconsistencies in his statements from the 2005 interview compared with his trial testimony. During closing argument, Muhle also highlighted how G.E.'s statements had changed.

[¶ 29] "There is no indication [the witness] made a formal 'statement'. . . . Rather, the prosecution spoke with [the witness] to gain a sense [of what he might testify to at the jury] trial. The fact the State did not formally record these pretrial interactions [or] disclose the results of these conversations . . . does not equate to a *per se* violation of Rule 16(f)(1)." *Charette,* 2004 ND 187, ¶ 17, 687 N.W.2d 484; *see also United States v. Barrett,* 766 F.2d 609, 617–18 (1st Cir.1985) (applying the federal rule and stating: "There was no report, scientific test results, or exculpatory evidence to be turned over . . . and we

are unaware of any other grounds upon which such a requirement of disclosure might be based.").

[¶ 30] We conclude the State did not violate Rule 16. The district court did not abuse its discretion in denying Muhle's motion for a mistrial.

## IV

[¶ 31] Muhle contends the evidence was insufficient to convict her of gross sexual imposition and abuse or neglect of a child.

[¶ 32] "This Court will reverse a conviction on the ground of insufficient evidence only if, after viewing the evidence and all reasonable inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Steen*, 2000 ND 152, ¶ 17, 615 N.W.2d 555 (citation omitted).

[¶ 33] Section 12.1–20–03(1)(d) provides the offense of gross sexual imposition: "A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if . . . The victim is less than fifteen years old." Sexual contact is "any touching, whether or not through the clothing or other covering, of the sexual or other intimate parts of the person . . . for the purpose of arousing or satisfying sexual or aggressive desires." N.D.C.C. § 12.1–20–02(4).

[¶ 34] Section 14–09–22, N.D.C.C., governs abuse or neglect of a child and provides, in part:

1. Except as provided in subsection 2, a parent, adult family or household member, guardian, or other custodian of any child, who willfully commits any of the following offenses is guilty of a class C felony except if the victim of an offense under subdivision a is under the age of six years

in which case the offense is a class B felony:

a. Inflicts, or allows to be inflicted, upon the child, bodily injury, substantial bodily injury, or serious bodily injury as defined by section 12.1–01–04 or mental injury.

[¶ 35] In this case, the three victims testified about what occurred in the Muhle household. Each child provided graphic details and explicit descriptions of what had happened to them and what they had seen. G.E. testified that he and his mother had sexual intercourse "after she got out of the shower." S.M. testified that Shannon Muhle was present when Andrew Muhle had sex with her. K.E. told Tammy Anderson that Shannon Muhle had had sex with G.E. The jury also heard testimony from Tammy Anderson, Detective Runcorn, and Dr. Norberg. Each of these witnesses recounted in detail what the children had told them during their respective interviews. Shannon Muhle denied any wrongdoing and denied witnessing or knowing about any abuse of the children by her husband, Andrew Muhle. The jury judged the credibility of the witnesses and weighed the evidence admitted at trial and found Shannon Muhle guilty on all counts. Viewing the evidence and all reasonable inferences in the light most favorable to that verdict, we conclude there was sufficient evidence to convict Shannon Muhle on both charges.

## V

[¶ 36] Muhle contends the State made prejudicial statements in its closing argument. This alleged error was not objected to at trial, and as we explained in the companion case, *State v. Muhle*, 2007 ND 132, ¶¶ 39–44, the error was not obvious. Muhle has not established reversible error.

## VI

[¶ 37] We affirm the district court judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., and DANIEL CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.